ERIC GRANT
United States Attorney
TARA A. AMIN
Assistant United States Attorney
United States Attorney's Office
501 I Street, Suite 10-100
Sacramento, California 95814
Telephone: (916) 554-2700
Tara.amin@usdoj.gov

Attorneys for the United States

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES,<br><br>Petitioner,<br><br>v.<br><br>ARAN INVESTMENTS, INC.; BITCASAS, INC.; LOANCOINS INC.,<br><br>Respondents. | CASE NO. 26 Misc. ____<br><br>DECLARATION OF COUNSEL IN SUPPORT OF THE UNITED STATES' PETITION FOR ORDER TO SHOW CAUSE AND SUMMARY ENFORCEMENT OF THE CIVIL INVESTIGATIVE DEMANDS 2025-EDCA-0009, 2025-EDCA-0010, & 2025-EDCA-0011 |

I, TARA A. AMIN, declare and state as follows:

1. I am an Assistant United States Attorney for the Eastern District of California. I am the attorney responsible for the civil investigation of this matter for the United States. I respectfully submit this declaration in support of the United States' petition for order to show cause and summary enforcement of the civil investigative demands.

2. As part of the investigation, on March 17, 2025, the United States issued Civil Investigation Demand No. 2025-EDCA-0009 to Aran Investments, Inc. c/or Andrea Beasley-Jolly pursuant to 31 U.S.C. § 3733(a) ("Aran CID"). A true and correct copy of the Aran CID is attached as Exhibit A.

3. The Aran CID seeks documents and interrogatories, and service was effectuated on March 21, 2025, when it was delivered to the registered address. A true and correct copy of the relevant tracking information is attached as Exhibit B.

4. On March 17, 2025, the United States issued Civil Investigative Demand No. 2025-EDCA-0010 to BitCasas, Inc. c/o Kamran Mohammadi pursuant to 31 U.S.C. § 3733(a) ("BitCasas CID"). A true and correct copy of the BitCasas CID is attached as Exhibit C.

5. The BitCasas CID seeks documents and interrogatories, and service was effectuated on March 24, 2025, when it was delivered to the registered address. A true and correct copy of the relevant tracking information is attached as Exhibit D.

6. On March 17, 2025, the United States issued Civil Investigative Demand No. 2025-EDCA-0011 to LoanCoins, Inc. c/o Kamran Mohammadi pursuant to 31 U.S.C. § 3733(a) ("LoanCoins CID"). A true and correct copy of the LoanCoins CID is attached as Exhibit E.

7. The LoanCoins CID seeks documents and interrogatories, and service was effectuated on March 20, 2025, when it was delivered to the registered address. A true and correct copy of the relevant tracking information is attached as Exhibit F.

8. Aran, BitCasas, and LoanCoins ("Respondents") are under the control of Mr. Kamran Mohammadi. The United States understands that Mr. Mohammadi has retained Mark Reichel to represent himself, as well the Respondents.

9. On April 8, 2025, the United States granted Mr. Reichel a 30-day extension to response to the Aran CID, BitCasas CID, and LoanCoins CID.

10. On May 23, 2025, the United States emailed Mr. Reichel because the United States had not received any documents or answers to interrogatories in response to the Aran CID, BitCasas CID, and/or LoanCoins CID.

11. On July 17, 2025, Mr. Reichel emailed the United States stating for the first time that Mr. Mohammadi has a Fifth Amendment issues with responding to the CIDs.

12. The United States and Mr. Reichel attempted to engage in settlement negotiations, but did not reach a resolution.

13. On January 6, 2026, the United States emailed Mr. Reichel requesting that he provide a complete response to the CIDs by January 12, 2026 or the United States will move to enforce the CIDs.

14. On July 9, 2026, I scheduled a meeting for July 13, 2026 with Mr. Reichel to discuss the outstanding CIDs. Although Mr. Reichel accepted the invitation to the meeting, he did not show up to

the meeting.

15. On July 13, 2026, I emailed Mr. Reichel stating that "[o]ver the past 16 months, it is my understanding that none of the entities have provided any documents or written interrogatory responses in compliance with the subpoena. In an attempt to gain compliance without court involvement, I am setting the response date as Friday, July 31, 2026. If I do not receive full compliance by then, I will move to enforce the CIDs in court." I also stated that "[i]n prior correspondence with Robert Fuentes [previously assigned AUSA], you indicated that Mr. Kamran Mohammadi is invoking his Fifth Amendment rights with respect to three CIDs. With respect to all three CIDs, Mr. Mohammadi cannot invoke his personal Fifth Amendment right to prevent compliance. It is well established law that corporations do not have a Fifth Amendment right against self-incrimination. *Braswell v. United States,* 487 U.S. 99,105 (1988). LoanCoins, Inc., Aran Investments, Inc., and BitCasas, Inc. are all corporations. Therefore, none of them have Fifth Amendment rights to invoke. And Mr. Mohammadi, as a corporate representative of these entities, "may not resist a subpoena for corporate records on Fifth Amendment grounds." *Id.* at 113; *see also In re Twelve Grand Jury Subpoenas*, 908 F.3d 525, 529-31 (9th Cir. 2018); *United States v. CB Surety LLC,* No. 2:23-cv-02812-TLN-DB, 2024 WL 71676, at *4-5 (E.D. Cal. Jan. 5, 2024)." A true and correct copy of this correspondence is attached as Exhibit G.

16. Having received no response from Mr. Reichel, I emailed Mr. Reichel on July 29 stating that "I have not yet received a reply to my below correspondence, dated July 13, 2026. As noted below, I am requesting full compliance with all three outstanding March 2025 CIDs by this Friday, July 31. If I do not receive a response from you by then, I intend to move to enforce the CIDs in court." *See* Exhibit G.

17. As of the date of this Declaration, the United States has not received any documents or answers to interrogatories, or any further communications from Mr. Reichel regarding the Aran CID, BitCasas CID, and/or LoanCoins CID.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that this declaration was executed on 4th day of August, 2026, at Sacramento, California.

*/s/ Tara Amin*
TARA A. AMIN
Assistant United States Attorney

# Exhibit A

CID NO. 2025-EDCA-0009

**U.S. DEPARTMENT OF JUSTICE**

*United States Attorney's Office*
*Eastern District of California*

*Michele Beckwith*
*Acting United States Attorney*

2500 Tulare Street, Suite 4401
Fresno, CA 93721

Phone 559/497-4000
Fax 559/497-4099
TTD 916/554-2855

# CIVIL INVESTIGATIVE DEMAND

No. 2025-EDCA-0009

March 17, 2025

VIA CERTIFIED MAIL

TO: Aran Investments, Inc.
c/o Andrea Beasley-Jolly
Agent for Service of Process
418 W. Sunnyoaks Ave.
Campbell, CA 95008

This Civil Investigative Demand ("Demand") is issued to Aran Investments, Inc., pursuant to 31 U.S.C. § 3733(a) in the course of an investigation to determine whether there are or have been violations of the False Claims Act, 31 U.S.C. § 3729. The U.S. Department of Justice is investigating whether Aran Investments submitted or caused to be submitted false or fraudulent claims—or made or caused to be made false records or statements material to false or fraudulent claims—relating to its application(s) for loans or loan forgiveness under the Paycheck Protection Program established by the Coronavirus Aid, Relief, and Economic Security Act, in violation of 31 U.S.C. § 3729(a)(1).

This Demand requires you to provide documents and answers to the Federal Government in response to the attached document requests and interrogatories. The information and documents provided in response to this Demand may be shared, used, and disclosed as provided by 31 U.S.C. § 3733.

## Document Requests

In accordance with the Instructions and Definitions set forth in **ATTACHMENT A**, you are required by this Demand to produce any and all documents in Aran Investments' possession, custody, or control that are responsive to the requests set forth in **ATTACHMENT B**. All documents should

be produced in accordance with the Instructions in **ATTACHMENT A** and the Production Specifications set forth in the **APPENDIX**.

You must make this material available to Assistant U.S. Attorney Robert A. Fuentes, who has been designated as a False Claims Act custodian in this case. These documents shall be produced no later than **30 days** from the receipt of this Demand at the United States Attorney's Office for the Eastern District of California, 2500 Tulare Street, Suite 4401, Fresno, CA 93721, or at such time and in such other location as may be mutually agreed upon by you and AUSA Fuentes. The production of documentary material in response to this Demand must be made under a sworn certificate in the form printed in this Demand. If you have any questions, AUSA Fuentes may be contacted at (559) 497-4059 or robert.fuentes@usdoj.gov.

**Written Interrogatories**

In accordance with the Instructions and Definitions set forth in **ATTACHMENT A,** you are required by this Demand to answer the interrogatories provided in **ATTACHMENT C.** Your answers shall be submitted no later than **30 days** from the receipt of this Demand to AUSA Fuentes at the United States Attorney's Office for the Eastern District of California, 2500 Tulare Street, Suite 4401, Fresno, CA 93721, or at such time and in such other place as may be agreed upon by you and AUSA Fuentes. The interrogatories shall be answered separately and fully in writing under oath and also shall be submitted under a sworn certificate in the form printed in this Demand. If you object to any interrogatory, the reasons for the objection shall be stated with specificity.

Issued at Sacramento, California, on March 17, 2025.

Michele Beckwith

Michele Beckwith
Acting U.S. Attorney
Eastern District of California

CC: Kamran Mohammadi

**ATTACHMENT A**

**Instructions**

1. Unless otherwise stated in any specific request below, the relevant time period is January 1, 2020, to the present.

2. Please produce imaged hard copy and electronic documents according to the **Specifications for Production of Electronically Stored Information and Digitized Images** in the **APPENDIX**.

3. This Demand is continuing in nature. If you become aware of or acquire possession, custody, or control of additional documents that are responsive to this Demand, you shall promptly produce such additional documents.

4. This Demand applies to all documents and information in your possession, custody, or control regardless of their location and regardless of whether such documents or information are held by your current or former employees, including, but not limited to, in-house IT specialists and technicians, and IT specialists and technicians to whom digital services have been outsourced.

5. All documents produced pursuant to this Demand are to be organized in such a manner that all documents relating to a particular request are grouped together and identified as being responsive to that request.

6. If any document that is otherwise responsive to this Demand is not disclosed because of a claim of privilege or other objection, you shall identify such document on a Privilege Log. The Privilege Log shall be produced in Excel or Word format and include the following information:

(a) the basis for the assertion of the privilege or objection;

(b) the type of document (e.g., letter, memorandum, email, etc.);

(c) the name(s) and title(s) of the author(s) (and if different, the preparer(s) and signatory(ies));

(d) the name(s) and title(s) of the individual(s) to whom the document was addressed;

(e) the name(s) and title(s) of the individual(s) to whom the document or a copy of the document was sent or to whom the document or a copy, or any part thereof, was shown;

(f) the date of the document;

(g) the number of pages;

(h) a general description of the subject matter; and

(i) the document request(s) to which the document is responsive.

7. When a requested document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible. If a privilege is asserted with regard to a part of the material contained in a document, the party claiming the privilege must clearly indicate the portions as to which the privilege is claimed. When a document is redacted or altered in any fashion, identify as to each document the reason for the redaction or alteration, the date of the redaction or alteration, and the person performing the redaction or alteration. Any redaction must be clearly visible on the redacted document.

8. If any document otherwise responsive to this Demand is not produced because it was lost, destroyed, or discarded:

(a) identify the document by type, date, and title;

(b) identify the person who last had possession, custody, or control over the document;

(c) state the date on which the document was destroyed or was discovered to have been lost;

(d) if the document was destroyed, state why it was destroyed and identify the person(s) who destroyed it;

(e) if the document was lost, describe the circumstances in which its loss was discovered, state the date that it was last seen or otherwise accounted for, and identify the person(s) who discovered its loss and who last saw or otherwise accounted for it;

(f) identify all persons who have knowledge pertaining to the destruction or loss of the document, giving a concise but complete statement of the knowledge you claim each such person has;

(g) identify all persons who have knowledge of the contents of each lost or destroyed document, giving a concise but complete statement of the knowledge you claim each such person has; and

(h) produce all existing indices, lists, or other documents in your possession, custody, or control that reflect the existence of such lost or destroyed documents, and/or their transfer, loss, or destruction.

9. If no documents responsive to a specific document request exist, a written statement to that effect shall be provided at the time of production.

10. If any document responsive to this Demand is in the possession, custody, or control of a third party, a written statement to that effect shall be provided at the time of production, providing the name, address, telephone number, and principal contact of any such third party.

**Definitions**

1. As used herein, the terms "you" or "your" shall refer to Aran Investments and any of its predecessors, successors, affiliates, subsidiaries, parent companies, branches, divisions, offices, units, officers, directors, employees, agents, and assigns.

2. "Communication" is used in the broadest sense permitted by Federal Rule of Civil Procedure 26(b), 34(a), and 45(a) and means any transmission of information orally or in writing.

3. "Document" and "Documents" are used in the broadest sense permitted by Federal Rule of Civil Procedure 26(b), 34(a), and 45(a) and mean not only writings set forth on paper but also information that has been recorded, stored, or transmitted on any medium, including, but not limited to, electronically stored information, electronic mail, audio recordings, video recordings, photographs, text messages, voice messages, instant messages, social or professional media messages or postings, and information stored in tablet applications.

4. "Employee" shall mean any person including, but not limited to, an employee, volunteer, independent contractor, agent, director, officer, representative, accountant, advisor, and consultant who acted or purported to act on your behalf or who performed any service for you under your name, whether on a full-time, part-time, piecework, commission, or other basis and whether paid or unpaid.

5. "Payroll costs" shall mean the sum of payments of any compensation with respect to an employee that is a salary, wage, commission, or similar compensation; payment of cash tip or equivalent; payment for vacation, parental, family, medical, or sick leave; allowance for dismissal or separation; payment required for the provisions of group health care or group life, disability, vision, or dental insurance benefits, including insurance premiums; payment of any retirement benefit; or payment of state or local tax assessed on the compensation of employees.

6. The term "PPP" means the Paycheck Protection Program established by Section 1102 of the Coronavirus Aid, Relief, and Economic Security Act.

7. The term "SBA" means the U.S. Small Business Administration.

8. "Relating to" and "related to" mean consisting of, concerning, pertaining to, referring to, reflecting, supporting, evidencing, prepared in connection with, used in preparation for, or being in any way legally, logically, or factually connected to the matter discussed.

9. The terms "and" and "or" shall be construed conjunctively or disjunctively so as to make each particular request inclusive rather than exclusive.

10. The terms "any" and "all" shall be construed conjunctively or disjunctively so as to make each particular request inclusive rather than exclusive.

11. The singular and plural forms of any word shall be construed interchangeably so as to bring within the scope of this Demand any document which might otherwise be construed as outside its scope.

CID NO. 2025-EDCA-0009

## ATTACHMENT B

## DOCUMENT REQUESTS

1. All documents or communications relating to each PPP loan disbursed to Aran Investments.

2. All documents or communications relating to each of Aran Investments' PPP loan applications, including the filed applications, attachments, supporting documentation, draft applications, worksheets, disclosures, communications with U.S. Bank or any other financial institution, and communications with the SBA.

3. All documents or communications relating to each of Aran Investments' applications for PPP loan forgiveness, including the filed applications, attachments, supporting documentation, draft applications, worksheets, disclosures, communications with U.S. Bank or any other financial institution, and communications with the SBA.

4. All documents or communications relating to Aran Investments' eligibility for PPP loans, including documents or communications relating to Aran Investments' understanding of its eligibility and Aran Investments' certifications that it was eligible.

5. All documents or communications relating to Aran Investments' eligibility for PPP loan forgiveness, including documents or communications relating to Aran Investments' understanding of its eligibility and Aran Investments' certifications that it was eligible.

6. All documents or communications relating to disbursement of PPP loan funds to Aran Investments.

7. All documents or communications showing Aran Investments' payroll costs for 2018, 2019, 2020, and 2021.

8. All documents or communications showing Aran Investments' payments of interest on mortgage obligations, rent payments, and utility payments for 2018, 2019, 2020, and 2021.

9. Documents sufficient to show all expenses paid by Aran Investments using PPP loan funds, including the purpose(s) of the expenses.

10. Documents sufficient to show the identities and positions of Aran Investments' principals and managerial employees during the relevant time period.

11. Documents, such as organizational diagrams or charts, sufficient to show Aran Investments' organizational and managerial structures during the relevant time period.

12. Documents, such as organizational diagrams or charts, sufficient to show Aran Investments' affiliated entities and their organizational relationship with Aran Investments during the relevant time period.

13. Aran Investments' signed and filed federal tax returns, including all schedules, certified by the Internal Revenue Service, for 2018, 2019, 2020, 2021, and 2022, including the tax returns for all of Aran Investments' affiliated entities.

14. All documents relating to Aran Investments' document retention policies, including policies concerning the retention of electronically stored information and emails.

15. All documents used in drafting responses to the interrogatories in Attachment C.

CID NO. 2025-EDCA-0009

## ATTACHMENT C

## INTERROGATORIES

1. For each PPP loan received by Aran Investments, identify the PPP loan number, the loan amount, and the loan amount forgiven.

2. Describe Aran Investments' business structure and tax status under the Internal Revenue Code for 2018, 2019, 2020, and 2021.

3. Identify each of Aran Investments' employees for 2018, 2019, 2020, and 2021, including each person's name, position, and contact information (business address, phone number, and email address).

4. Identify the total annual payroll costs for each employee of Aran Investments for 2018, 2019, 2020, and 2021.

5. Identify Aran Investments' total payments for rent, utilities, and interest on mortgage obligations for 2018, 2019, 2020, and 2021.

6. Identify each expense for which Aran Investments used PPP loan funds, including its amount and purpose.

7. Identify the owner(s) of each of Aran Investments' affiliated entities, as provided on the entity's filed federal tax returns. If an owner is an irrevocable trust, list that trust as the owner. If an owner is a revocable trust, also identify the individual creator(s) of the trust. If an owner is a company or companies, also identify the owner(s) of the company(ies).

8. Identify all people who participated or were involved in Aran Investments' decision(s) to apply for loans under the PPP, including each person's name, position, and contact information (business address, phone number, and email address).

9. Identify all people who participated or were involved in Aran Investments' decision(s) to apply for loan forgiveness under the PPP, including each person's name, position, and contact information (business address, phone number, and email address).

10. Describe the steps taken by Aran Investments to determine whether it was eligible to receive PPP loans, including the specific loan amounts requested, prior to submitting any such loan application.

11. Describe the steps taken by Aran Investments to determine whether it was eligible to receive PPP loan forgiveness, including the specific amounts requested to be forgiven, prior to submitting any such loan forgiveness application.

12. Identify any documents or communications outside your possession, custody, or control that pertain to Aran Investments' eligibility to receive loans under the PPP, including each document's type, date, title, and last known location.

13. Identify any documents or communications outside your possession, custody, or control that pertain to Aran Investments' eligibility for loan forgiveness under the PPP, including each document's type, date, title, and last known location.

14. Identify the people most knowledgeable regarding the matters addressed in this Demand, including each person's name, position, and contact information (business address, phone number, and email address).

15. Identify all people who were involved in drafting responses to these interrogatories, including each person's name, position, and contact information (business address, phone number, and email address).

16. Identify all documents that were used in drafting responses to these interrogatories, including each document's type, date, and title.

# APPENDIX

## SPECIFICATIONS FOR PRODUCTION OF ELECTRONICALLY STORED INFORMATION (ESI) AND DIGITIZED ("SCANNED") IMAGES ("PRODUCTION SPECIFICATIONS")

Careful consideration should be given to the methodology, implementation and documentation of ESI collection to ensure that all responsive data and metadata are preserved in the collection process.

### 1. SPECIFICATION MODIFICATIONS

Any modifications or deviations from the Production Specifications may be done only with the express permission of the government and these modifications or deviations should be communicated to the government and approved by the government in written form. Any responsive data or documents that exist in locations or native forms not discussed in these Production Specifications remain responsive and, therefore, arrangements should be made with the government to facilitate their production.

### 2. PRODUCTION FORMAT OF ESI AND IMAGED HARD COPY

Responsive ESI and imaged hard copy shall be produced in the format outlined below. All ESI, except as outlined below in sections 5 – 20, shall be rendered to TIFF image format, and must be accompanied by the following files:

a. **Concordance.dat** (All applicable metadata (see section 3 below) shall be extracted and provided in Concordance® load file format.

b. **Ipro.lfp** (Or alternatively a Concordance® Image Cross Reference file - .opt).

c. **IproOCR.lfp** file.

d. **Image File Format** must be in the following format:

All images, paper documents scanned to images, or rendered ESI, shall be produced as 300 dpi single-page TIFF files, CCITT Group IV (2D Compression). Images should be uniquely and sequentially Bates numbered and unless otherwise specified, Bates numbers should be an endorsement on each image.

- All TIFF file names shall include the unique Bates number burned into the image. (See paragraph 21, below, regarding Bates number instructions.)
  - Each Bates number shall be a standard length, include leading zeros in the number, and be unique for each produced page.
  - All TIFF image files shall be stored with the ".tif" extension.
  - Images shall be OCR'd using standard COTS products.
    - An exception report shall be provided when limitations of paper digitization software/hardware or attribute conversion do not allow

for OCR text conversion of certain images. The report shall include the DOCID or Bates number(s) corresponding to each such image.

- All pages of a document or all pages of a collection of documents that comprise a folder or other logical grouping, including a box, shall be delivered on a single piece of media.
- No image folder shall contain more than 2000 images.

e. **Ipro.lfp and IproOCR.lfp or in the alternative Concordance® Image Cross Reference file:** Images should be accompanied by an Ipro.lfp and IproOCR.lfp file or in the alternative a Concordance® Image Cross Reference file that associates each Bates number with its corresponding single-page TIFF image file. The Cross Reference file should also contain the image file path for each Bates numbered page.

- Ipro.lfp file format:

```
IM, ABC00000001,D,0,@2015_1211;DatabaseName\Images\001; ABC00000001.tif;2,0
IM, ABC00000002,,0,@2015_1211;DatabaseName\Images\001; ABC00000002.tif;2,0
IM, ABC00000003,,0,@2015_1211;DatabaseName\Images\001; ABC00000003.tif;2,0
IM, ABC00000004,D,0,@2015_1211;DatabaseName\Images\001; ABC00000004.tif;2,0
```

- Image Cross Reference Sample Format:

```
ABC00000001,OLS,D:\DatabaseName\Images\001\ ABC00000001.TIF,Y,,,
ABC00000002,OLS:\DatabaseName\Images\001\ ABC00000002.TIF,,,,
ABC00000003,OLS:\DatabaseName\Images\001\ ABC00000003.TIF,,,,
ABC00000004,OLS,D:\DatabaseName\Images\001\ ABC00000004.TIF,Y,,,
```

f. **Concordance® Load File:** Images should also be accompanied by a "text load file" containing delimited text that will populate fields in a searchable, flat database environment. The file should contain the required fields listed below in section 3.

- Text delimited load files are defined using the standard Concordance delimiters. For example:

| | |
|---|---|
| *Field Separator* | *¶ or Code 020* |
| *Text Qualifier* | *þ or Code 254* |

- The text file should also contain hyperlinks to applicable native files, such as Microsoft Excel, PowerPoint, Audio or Video files.
- There should be one line for every record in a collection.
- The load file must contain a header listing the metadata/database fields contained within in the order they appear within the data file. For example, if the data file consists of a First Page of a Record (BegDoc), Last Page of a Record (EndDoc), DOCID, DOCDate, File Name, and a Title, then the structure may appear as follows:

þBEGDOCþ¶þENDDOCþ¶þDOCIDþ¶þDOCDATEþ¶þFILENAMEþ¶þTITLEþ

g. **The extracted/OCR text** for each document should be provided as a separate single text file. The file name should match the BEGDOC or DOCID for that specific record and be accompanied by the .txt extension.

h. **Directory and folder structure:** The directory structure for productions should be:

*CaseName***LoadFiles**
*CaseName***Images** < For supporting images (can include subfolders as needed should not include more than 2,000 files per folder)
*CaseName***Natives** <Native Files location (can include subfolders as needed should not include more than 2,000 files per folder)
*CaseName***Text** <Extracted Text files location (can include subfolders as needed should not include more than 2,000 files per folder)

**3. REQUIRED METADATA/DATABASE FIELDS**

- A "✓" denotes that the indicated field should be present in the load file produced.
- "Other ESI" includes data discussed in sections 5 – 20 below, but does not include email, email repositories (section 11), "stand alone" items (section 12), and imaged hard copy material (section 9). Email, email repositories, and "stand alone" materials (section 12) should comply with "Email" column below. Imaged hard copy materials should comply with the "Hard Copy" column.

CID NO. 2025-EDCA-0009

| **Field name** | **Field Description** | **Field Type** | **Field Value** | **Hard Copy** | **E-mail** | **Other ESI** |
|---|---|---|---|---|---|---|
| BEGDOC | Start Bates (including prefix) - No spaces | Text | 60 | ✓ | ✓ | ✓ |
| ENDDOC | End Bates (including prefix) - No spaces | Text | 60 | ✓ | ✓ | ✓ |
| BEGATTACH | Start Bates number of first attachment | Text | 60 | ✓ | ✓ | ✓ |
| ENDATTACH | End Bates number of last attachment | Text | 60 | ✓ | ✓ | ✓ |
| DOCID | Unique document Bates # or populate with the same value as Start Bates (DOCID = BEGDOC#) | Text | 60 | ✓ | ✓ | ✓ |
| PAGECNT | Page Count | Number | 10 | ✓ | ✓ | ✓ |
| COLLECTION SOURCE | Name of the Company/Organization data was collected from | Text | 160 | ✓ | ✓ | ✓ |
| SOURCE ID (BOX #) | Submission/volume/box number | Text | 10 | ✓ | ✓ | ✓ |
| CUSTODIAN | Custodian/Source - format: Last, First or ABC Dept. | Text | 160 | ✓ | ✓ | ✓ |
| AUTHOR | Creator of the document | Text | 500 | | | ✓ |
| GROUPID | Contains the Group Identifier for the family, in order to group files with their attachments | Text | 60 | | ✓ | ✓ |
| PARENTID | Contains the Document Identifier of an attachment's parent | Text | 60 | | ✓ | ✓ |
| ATTACHIDS | Child document list; Child DOCID or Child Start Bates | Text – semicolon delimited | Unlimited | ✓ | ✓ | ✓ |
| ATTACHLIST | List of Attachment filenames | Text – semicolon delimited | Unlimited | | ✓ | ✓ |
| PROPERTIES | Privilege notations, Redacted, Document Withheld Based On Privilege | Text – semicolon delimited | Unlimited | ✓ | ✓ | ✓ |
| DOCTYPE | Use the following choices: Image, Loose E-mail, E-mail, E-Doc, Attachment, Hard Copy or Other. If using Other, please specify what type after Other | Text | 60 | ✓ | ✓ | ✓ |
| FROM | Author - format: Last name, First name. | Text | 160 | | ✓ | ✓ |
| TO | Recipient - format: Last name, First name. | Text – semicolon delimited | Unlimited | | ✓ | ✓ |

CID NO. 2025-EDCA-0009

| | | | | | | |
|---|---|---|---|---|---|---|
| CC | Carbon Copy Recipients - format: Last name, First name. | Text – semicolon delimited | Unlimited | | ✓ | ✓ |
| BCC | Blind Carbon Copy Recipients - format: Last name, First name. | Text – semicolon delimited | Unlimited | | ✓ | ✓ |
| SUBJECT | Subject line/Document Title | Text | Unlimited | | ✓ | ✓ |
| EMAIL SUBJECT | Subject line for Emails | Text | Unlimited | | ✓ | ✓ |
| CONVINDEX | E-mail system ID used to track replies, forwards, etc. | Text | Unlimited | | ✓ | |
| DATE MODIFIED | DATE ONLY - Last Modified Date for files and Sent date for e-mail, this field inherits the date for attachments from their parent. | Date | MM/DD/YYYY | | ✓ | ✓ |
| DATE SENT | DATE ONLY - Date Sent for files and Sent date for e-mail, this field inherits the date for attachments from their parent. | Date | MM/DD/YYY | | ✓ | ✓ |
| TEXT FILEPATH | Relative file path of the text file associated with either the extracted text or the OCR | Text | Unlimited | ✓ | ✓ | ✓ |
| DATE TIME SENT | Date Sent (USE TIME ZONE OF COLLECTION LOCALITY) | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | ✓ |
| DATE TIME CRTD | Date Created (USE TIME ZONE OF COLLECTION LOCALITY) | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | ✓ |
| DATE TIME SVD | Date Saved (USE TIME ZONE OF COLLECTION LOCALITY) | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | ✓ |
| DATE TIME MOD | Date Last Modified (USE TIME ZONE OF COLLECTION LOCALITY) | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | ✓ |
| DATE TIME RCVD | Date Received (USE TIME ZONE OF COLLECTION LOCALITY) | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | |
| DATE TIME ACCD | Date Accessed (USE TIME ZONE OF COLLECTION LOCALITY) | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | ✓ |
| FILE SIZE | Native File Size in bytes | Number | 10 | | | ✓ |
| FILENAME | File name - name of file as it appeared in its original location | Text | Unlimited | | | ✓ |
| APPLICATION | Application used to create native file (e.g. Excel, Outlook, Word) | Text | 160 | | ✓ | ✓ |
| FILE EXTENSION | Extension for the file (e.g. .doc, .pdf, .wpd) | Text | 10 | | ✓ | ✓ |

| | | | | | | |
|---|---|---|---|---|---|---|
| FILEPATH | Data's original source full folder path | Text | Unlimited | | ✓ | ✓ |
| NATIVE LINK | Relative file path location to the native file | Text | Unlimited | | ✓ | ✓ |
| FOLDER ID | Complete E-mail folder path (e.g. Inbox\Active) or Hard Copy container information (e.g. folder or binder name) | Text | Unlimited | ✓ | ✓ | ✓ |
| PARAGRAPH REQUEST NUMBER | Subpoena/request paragraph number to which the document is responsive. Use semicolon to delimit multiple entries. | Text – semicolon delimited | Unlimited | ✓ | ✓ | ✓ |
| MD5_HASH | MD5 Hash value (used for deduplication or other processing) (e-mail hash values must be run with the e-mail and all of its attachments) | Text | Unlimited | | ✓ | ✓ |
| MESSAGEHEADER | E-mail header. Can contain IP address | Text | Unlimited | | ✓ | |
| ATTACHMCOUNT | Number of attachments (any level child document) associated with a ParentID | Text | 10 | | ✓ | |
| FILE TYPE | Identifies the application that created the file Type of file, not to be confused with file extension | Text | 160 | | ✓ | ✓ |
| COMMENTS | Identifies whether the document has comments associated with it | Text | 10 | | ✓ | ✓ |
| MESSAGE TYPE | Exchange Message class or equivalent | Text | 60 | | ✓ | |
| EXTENDED PROPERTIES | For PDFs Only | Text | 600 | | ✓ | ✓ |

## 4. SEARCH, DE-DUPLICATION, NEAR-DUPLICATE IDENTIFICATION, E-MAIL CONVERSATION THREADING AND OTHER CULLING PROCEDURES

De-duplication of exact copies within a custodian's data may be done at the family level, but all file paths and custodians must be provided for each duplicate document in an exception report in .csv format. The recipient shall not use any other procedure to cull, filter, group, separate or de-duplicate, or near-deduplicate, etc. (i.e., reduce the volume of) responsive material before discussing with and obtaining the written approval of the government. All objective coding (e.g., near duplicate ID or e-mail thread ID) shall be discussed and produced to the government as additional metadata fields. The recipient will not employ analytic software or technology to search identify, or review potentially responsive material, including but not limited to technology assisted review (TAR) or predictive coding, without first discussing with the government.

**5. HIDDEN TEXT**

All hidden text (e.g. track changes, hidden columns, mark-ups, notes) shall be expanded and rendered in the image file. For files that cannot be expanded the native files shall be produced with the image file.

**6. EMBEDDED FILES**

All non-graphic embedded objects (Word documents, Excel spreadsheets, .wav files, etc.) that are found within a file shall be extracted and produced. For purposes of production, the embedded files shall be treated as attachments to the original file, with the parent/child relationship preserved.

**7. IMAGE-ONLY FILES**

All image-only files (non-searchable .pdfs, multi-page .tiffs, Snipping Tool and other screenshots, etc., as well as all other images that contain text) shall be produced with associated OCR text and metadata/database fields identified in section 3 for "Other ESI."

**8. ENCRYPTED FILES**

Any data (whether individual files or digital containers) that is protected by a password, encryption key, digital rights management, or other encryption scheme, shall be decrypted prior to processing for production.

**a.** The unencrypted text shall be extracted and provided per section 2.c. The unencrypted files shall be used to render images and provided per sections 2.a and 2.b. The unencrypted native file shall be produced pursuant to sections 10-20.

**b.** If such protected data is encountered but unable to be processed, each file or container shall be reported as an exception in the accompanying Exception Report (pursuant to section 26) and shall include all available metadata associated with the data, including custodian information.

**9. PRODUCTION OF IMAGED HARD COPY RECORDS**

All imaged hard copy material shall reflect accurate document unitization including all attachments and container information (to be reflected in the PARENTID, ATTACHID, BEGATTACH, ENDATTACH and FOLDERID).

**a.** Unitization in this context refers to identifying and marking the boundaries of documents within the collection, where a document is defined as the smallest physical fastened unit within a bundle. (e.g., staples, paperclips, rubber bands, folders, or tabs in a binder).

**b.** The first document in the collection represents the parent document and all other documents will represent the children.

**c.** All imaged hard copy documents shall be produced as 300 dpi single-page TIFF files, CCITT Group IV (2D Compression). All documents shall be produced in black and white TIFF format unless the image requires color. An image requires color when color in the document adds emphasis to information in the document or is itself

information that would not be readily apparent on the face of a black and white image. Images identified as requiring color shall be produced as color 300 dpi single-page JPEG files.

**d.** All objective coding (e.g., document date or document author) should be discussed and produced to the government as additional metadata/database fields.

## 10. PRODUCTION OF SPREADSHEETS AND PRESENTATION FILES

All spreadsheet and presentation files (e.g. Excel, PowerPoint) shall be produced in the unprocessed "as kept in the ordinary course of business" state (i.e., in native format), with an associated placeholder image and endorsed with a unique Bates number. *See* section 20 below. The file produced should maintain the integrity of all source, custodian, application, embedded and related file system metadata. No alteration shall be made to file names or extensions for responsive native electronic files. The file shall include a text file with the extracted text named with the same corresponding unique Bates number specified above.

## 11. PRODUCTION OF E-MAIL REPOSITORIES

E-mail repositories, also known as e-mail databases (e.g., Outlook PST, Lotus NSF, etc.), can contain a variety of items, including: messages, calendars, contacts, tasks, etc. For purposes of production, responsive items shall include the "E-mail" metadata/database fields outlined in section 3, including but not limited to all parent items (mail, calendar, contacts, tasks, notes, etc.) and child files (attachments of files to e-mail or other items) with the parent/child relationship preserved. Our preferred format for e-mail productions is PST. E-mail should NOT be provided in X400 or X500 format. E-mail databases from systems other than Microsoft Exchange shall be produced after consultation with and written consent of the government about the format for the production of such databases.

## 12. PRODUCTION OF ITEMS ORIGINALLY GENERATED IN E-MAIL REPOSITORIES BUT FOUND AND COLLECTED OUTSIDE OF E-MAIL REPOSITORIES, I.E., "STAND-ALONE" ITEMS

Any parent e-mail or other parent items (e.g., calendar, contacts, tasks, notes, etc.) found and collected outside of e-mail repositories (e.g., items having extensions .msg, .htm, .mht, etc.), shall be produced with the "Loose E-mail" metadata fields outlined in section 3, including but not limited to any attachments, maintaining the family (parent/child) relationship.

## 13. PRODUCTION OF INSTANT MESSENGER (IM), VOICEMAIL DATA, AUDIO DATA, VIDEO DATA, ETC.

The responding party shall identify, collect, and produce any and all data which is responsive to the requests which may be stored in audio or video recordings, cell phone/PDA/Blackberry/smart phone data, tablet data, voicemail messaging data, instant messaging, text messaging, conference call data, video/audio conferencing (e.g., GoTo Meeting, WebEx), and related/similar technologies. However, such data, logs, metadata or other files related thereto, as well as other less common but similar data types, shall be produced after consultation with and written consent of the government about the format for the production of such data.

## 14. PRODUCTION OF SOCIAL MEDIA

Prior to any production of responsive data from social media (e.g., Twitter, Facebook, Google+, LinkedIn, etc.) the producing party shall first discuss with the government the potential export formats before collecting the information, to ensure it is collected and produced in a way that preserves the original metadata, has a clear chain of custody, and provides as much information as possible regarding the source and history of each individual communication.

Social media platforms offer different functions, forms of content, and capability for downloading accounts. Because of these differences, prior to collection of social media data, the producing party must discuss with the government the available export and production methods and formats that the producing party is considering. Unless the government agrees to an alternative in writing, regardless of the social media platform, productions of social media content must meet the following general requirements: (1) separate (2) searchable (3) static images of (4) each responsive posting on the social media platform, (5) all related content (e.g., comments, likes, share or re-transmittal information, images, videos, linked documents and content), and (6) associated metadata (e.g., user name(s), date, and time of all posts, comments, likes, share or re-transmittals).

These general requirements are in addition to any more specific requirements in a particular request (e.g., geolocation data), and the producing party must ask the government about any perceived conflict between these requirements and another source of specifications or requirements. If available from the social media platform or through social media data processing software, files that facilitate interactive review of the data (i.e., html files) as well as load files in .csv format must be produced with the associated content.

## 15. PRODUCTION OF STRUCTURED DATA

Prior to any production of responsive data from a structured database (e.g., Oracle, SAP, SQL, MySQL, QuickBooks, etc.), the producing party shall first identify the database type and version number, provide the database dictionary and any user manuals, or any other documentation describing the structure and/or content of the database and a list of all reports that can be generated from the database. The list of reports shall be provided in native Excel (.xls or .xlsx) format.

## 16. PRODUCTION OF STRUCTURED DATA FROM PROPRIETARY APPLICATIONS

Prior to any production of structured data from proprietary applications (e.g., proprietary timekeeping, accounting, sales rep call notes, CRMs, SharePoint etc.) the producing party shall first provide the database dictionary and a list of all reports that can be generated from the structured database. The list of reports shall be produced in native Excel (.xls or .xlsx) format.

## 17. PRODUCTION OF PHOTOGRAPHS WITH NATIVE FILE OR DIGITIZED ESI

Photographs shall be produced as single-page JPEG files with a resolution equivalent to the original image as they were captured/created. All JPEG files shall have extracted metadata/database fields provided in a Concordance® load file format as outlined in section 3 for "Other ESI."

## 18. PRODUCTION OF IMAGES FROM WHICH TEXT CANNOT BE OCR CONVERTED

An exception report shall be provided when limitations of paper digitization software/hardware or attribute conversion do not allow for OCR text conversion of certain images. The report shall include the DOCID or Bates number(s) corresponding to each such image.

## 19. PRODUCTION OF ESI FROM NON-PC OR NON-WINDOWS-BASED SYSTEMS

If responsive ESI is in non-PC or non-Windows-based Systems (e.g., Apple, IBM mainframes, and UNIX machines, Android device, etc.), the ESI shall be produced after discussion with and written consent of the government about the format for the production of such data.

## 20. PRODUCTION OF NATIVE FILES (WHEN APPLICABLE PURSUANT TO THESE SPECIFICATIONS)

Production of native files, as called for in these specifications, shall have extracted metadata/database fields provided in a Concordance® load file format as defined in the field specifications for "Other ESI" as outlined in section 3.

ESI shall be produced in a manner which is functionally usable by the government. The following are examples:

- **a.** AutoCAD data, e.g., DWG and DXF files, shall be processed/converted and produced as single-page JPG image files and accompanied by a Concordance® Image formatted load file as described above. The native files shall be placed in a separate folder named "NATIVES" on the production media and linked by a hyperlink within the text load file.
- **b.** GIS data shall be produced in its native format and be accompanied by a viewer such that the mapping or other data can be reviewed in a manner that does not detract from its ability to be reasonably understood.
- **c.** Audio and video recordings shall be produced in native format and be accompanied by a viewer if such recordings do not play in a generic application (e.g., Windows Media Player).

## 21. BATES NUMBER CONVENTION

All images should be assigned a unique Bates numbers before production to the government. Each Bates number shall be a standard length, include leading zeros in the number, and be unique for each produced page. The numbers should be endorsed on the actual images at a location that does not obliterate, conceal, or interfere with any information from the source document. Native files should be assigned a single Bates number for the entire file which will represent the native document in the load/dat file. The load/dat file will include a reference to the native file path and utilize the NATIVELINK metadata field). The Bates number shall not exceed 30 characters in length and shall include leading zeros in the numeric portion. The Bates number shall be a unique number given to each page (when assigned to an image) or to each document (when assigned to a native file). If the parties agree to a rolling production, the numbering convention shall remain consistent throughout

the entire production. There shall be no spaces between the prefix and numeric value. If suffixes are required, please use "dot notation." Below is a sample of dot notation:

| | |
|---|---|
| PREFIX_0000001 | PREFIX_0000003 |
| PREFIX0000001 | PREFIX0000003 |
| PREFIX0000001.001 | PREFIX0000003.001 |
| PREFIX0000001.002 | PREFIX0000003.002 |

### 22. MEDIA FORMATS FOR STORAGE AND DELIVERY OF PRODUCTION DATA

Electronic documents and data shall be delivered on any of the following media:

- **a.** CD-ROMs and/or DVD-R (+/-) formatted to ISO/IEC 13346 and Universal Disk Format 1.02 specifications; Blu-ray.
- **b.** External hard drives (USB 3.0 or higher, Firewire or eSATA, formatted to NTFS format specifications) or flash drives.
- **c.** Storage media used to deliver ESI shall be appropriate to the size of the data in the production.
- **d.** Media should be labeled with the case name, production date, Bates range, and producing party.

### 23. VIRUS PROTECTION AND SECURITY FOR DELIVERY OF PRODUCTION DATA

Production data shall be free of computer viruses. Any files found to include a virus shall be quarantined by the producing party and noted in a log to be provided to the government. Password protected or encrypted files or media shall be provided with corresponding passwords and specific decryption instructions. No encryption software shall be used without the written consent of the government.

### 24. COMPLIANCE AND ADHERENCE TO GENERALLY ACCEPTED TECHNICAL STANDARDS

Production shall be in conformance with standards and practices established by the National Institute of Standards and Technology ("NIST" at www.nist.gov), U.S. National Archives & Records Administration ("NARA" at www.archives.gov), American Records Management Association ("ARMA International" at www.arma.org), American National Standards Institute ("ANSI" at www.ansi.org), International Organization for Standardization ("ISO" at www.iso.org), and/or other U.S. Government or professional organizations.

### 25. READ ME TEXT FILE

All deliverables shall include a "read me" text file at the root directory containing: total number of records, total number of images/pages or files, mapping of fields to plainly identify field names, types, lengths, and formats. The file shall also indicate the field name to which images will be linked for viewing, date and time format, and confirmation that the number of files in load files matches the number of files produced.

## 26. EXCEPTION REPORT

An exception report, in .csv format, shall be included, documenting any production anomalies utilizing the electronic Bates number (DOCID or control numbering) assigned during the collection, processing, and production phases.

## 27. TRANSMITTAL LETTER TO ACCOMPANY DELIVERABLES

All deliverables should be accompanied by a transmittal letter including the production date, case name and number, producing party name, and Bates number range produced.

CID NO. 2025-EDCA-0009

# DECLARATION OF COMPLIANCE

(Documents)

I have responsibility for producing the documents requested by this Civil Investigative Demand. I hereby certify that all the documentary material required by the Civil Investigative Demand and in the possession, custody, or control of Aran Investments, Inc., has been produced to the false claims law investigator or custodian named therein.

If any such material has not been produced because of a lawful objection, the objection to the document request and the reasons for the objection have been stated.

I declare under penalty of perjury under the laws of the United States of America (28 U.S.C. § 1746) that the forgoing is true and correct.

Executed on __________
Date

______________________________
Printed Name

______________________________
Title

______________________________
Signature

CID NO. 2025-EDCA-0009

## DECLARATION OF CUSTODIAN OF RECORDS
(Documents)

I, the undersigned, being the duly authorized Custodian of Records and having authority to certify the attached records, declare the following:

☐ CERTIFICATION OF RECORDS COPIED

A. The attached records were (1) made at or near the time of the acts, events, or conditions set forth therein by, or from information transmitted by, a person with knowledge of those matters, (2) kept in the course of Aran Investments' regularly conducted activities, and (3) made pursuant to a regular practice of those regularly conducted activities, per Fed. R. Evid. 902(11).

B. The records provided are true copies of all the documents described in the Civil Investigative Demand presented to me, or the original records were provided to the attorney or the attorney's representative for copying at our place of business.

☐ CERTIFICATION OF NO RECORDS

A. A thorough search of our organization's files, carried out under my direction, revealed no documents or records requested in the Civil Investigative Demand presented to me.

B. It is understood that such documents or records could exist under another spelling, name, or classification, but with the information furnished to our organization, and to the best of our knowledge, no such records exist in our possession, custody, or control.

I declare under penalty of perjury under the laws of the United States of America (28 U.S.C. § 1746) that the forgoing is true and correct.

Executed on __________      ______________________________
Date      Printed Name

______________________________
Title

______________________________
Signature

CID NO. 2025-EDCA-0009

## DECLARATION OF COMPLIANCE

(Interrogatories)

I have responsibility for answering the written interrogatories provided in this Civil Investigative Demand. I hereby certify that all the information required by the Civil Investigative Demand and in the possession, custody, control, or knowledge of the person to whom the Demand is directed has been submitted to the false claims law investigator or custodian identified therein. I certify under penalty of perjury under the laws of the United States of America that the interrogatory responses are true and correct.

If any such information has not been furnished because of a lawful objection, the objection to the interrogatory and the reasons for the objection have been stated.

I declare under penalty of perjury under the laws of the United States of America (28 U.S.C. § 1746) that the forgoing is true and correct.

Executed on __________
Date

______________________________
Printed Name

______________________________
Title

______________________________
Signature

CID NO. 2025-EDCA-0009

**VERIFIED RETURN OF SERVICE**

I, Bonnie L. L'Argent, an employee of the United States working under the direction and supervision of Assistant U.S. Attorney Robert A. Fuentes in connection with a false claims law investigation, hereby certify that on March 17, 2025, I served Civil Investigative Demand No. 2025-EDCA-0009 on Aran Investments, Inc., by delivering an executed copy of such Demand via Certified Mail, with a Return Receipt requested, to:

Aran Investments, Inc.
c/o Andrea Beasley-Jolly
Agent for Service of Process
418 W. Sunnyoaks Ave.
Campbell, CA 95008

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 17, 2025, at Fresno, California.

Signature [signature]

Title Legal Assistant

9589 0710 5270 0300 1574 49

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Certified Mail Fee
$
Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy) $
☐ Return Receipt (electronic) $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required $
☐ Adult Signature Restricted Delivery $
Postage
$
Total Po
$
Sent To
Street a
City, Sta

Postmark Here

Kamran Mohammadi
Aran Investments, Inc.
161 N. Civic Drive #401
Walnut Creek, CA 94596

PS Form 3800, January 2023 PSN 7530-02-000-9047 See Reverse for Instructions

9 0710 5270 0300 1574 56

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Certified Mail Fee
$
Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy) $
☐ Return Receipt (electronic) $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required $
☐ Adult Signature Restricted Delivery $
Post
$
Tota
$
Sent

Postmark Here

Aran Investments, Inc.
c/o Andrea Beasley-Jolly
Agent for Service of Process
418 W. Sunnyoaks Ave

# Exhibit B

# USPS Tracking®

FAQs >

Remove ✕

**Tracking Number:**

## 9589071052700300157456

Copy Add to Informed Delivery (https://informeddelivery.usps.com/)

### Latest Update

Your item was delivered to an individual at the address at 9:45 am on March 21, 2025 in CAMPBELL, CA 95008.

**Get More Out of USPS Tracking:**

**USPS Tracking Plus®**

Feedback

### Delivered

**Delivered, Left with Individual**

CAMPBELL, CA 95008
March 21, 2025, 9:45 am

**See All Tracking History**

**What Do USPS Tracking Statuses Mean? (https://faq.usps.com/s/article/Where-is-my-package)**

**Text & Email Updates**

**USPS Tracking Plus®**

**Product Information**

**See Less**

Track Another Package

Enter tracking or barcode numbers

## Need More Help?

Contact USPS Tracking support for further assistance.

**FAQs**

# Exhibit C

CID NO. 2025-EDCA-0010

**U.S. DEPARTMENT OF JUSTICE**

*United States Attorney's Office*
*Eastern District of California*

*Michele Beckwith*
*Acting United States Attorney*

2500 Tulare Street, Suite 4401
Fresno, CA 93721

Phone 559/497-4000
Fax 559/497-4099
TTD 916/554-2855

# CIVIL INVESTIGATIVE DEMAND
No. 2025-EDCA-0010

March 17, 2025

VIA CERTIFIED MAIL

TO: BitCasas, Inc.
c/o Kamran Mohammadi
Chief Executive Officer
Agent for Service of Process
161 N. Civic Drive #401
Walnut Creek, CA 94596

This Civil Investigative Demand ("Demand") is issued to BitCasas, Inc., pursuant to 31 U.S.C. § 3733(a) in the course of an investigation to determine whether there are or have been violations of the False Claims Act, 31 U.S.C. § 3729. The U.S. Department of Justice is investigating whether BitCasas submitted or caused to be submitted false or fraudulent claims—or made or caused to be made false records or statements material to false or fraudulent claims—relating to its application(s) for loans or loan forgiveness under the Paycheck Protection Program established by the Coronavirus Aid, Relief, and Economic Security Act, in violation of 31 U.S.C. § 3729(a)(1).

This Demand requires you to provide documents and answers to the Federal Government in response to the attached document requests and interrogatories. The information and documents provided in response to this Demand may be shared, used, and disclosed as provided by 31 U.S.C. § 3733.

## Document Requests

In accordance with the Instructions and Definitions set forth in **ATTACHMENT A**, you are required by this Demand to produce any and all documents in BitCasas' possession, custody, or control that are responsive to the requests set forth in **ATTACHMENT B**. All documents should be

produced in accordance with the Instructions in **ATTACHMENT A** and the Production Specifications set forth in the **APPENDIX**.

You must make this material available to Assistant U.S. Attorney Robert A. Fuentes, who has been designated as a False Claims Act custodian in this case. These documents shall be produced no later than **30 days** from the receipt of this Demand at the United States Attorney's Office for the Eastern District of California, 2500 Tulare Street, Suite 4401, Fresno, CA 93721, or at such time and in such other location as may be mutually agreed upon by you and AUSA Fuentes. The production of documentary material in response to this Demand must be made under a sworn certificate in the form printed in this Demand. If you have any questions, AUSA Fuentes may be contacted at (559) 497-4059 or robert.fuentes@usdoj.gov.

## Written Interrogatories

In accordance with the Instructions and Definitions set forth in **ATTACHMENT A,** you are required by this Demand to answer the interrogatories provided in **ATTACHMENT C.** Your answers shall be submitted no later than **30 days** from the receipt of this Demand to AUSA Robert A. Fuentes at the United States Attorney's Office for the Eastern District of California, 2500 Tulare Street, Suite 4401, Fresno, CA 93721, or at such time and in such other place as may be agreed upon by you and AUSA Fuentes. The interrogatories shall be answered separately and fully in writing under oath and also shall be submitted under a sworn certificate in the form printed in this Demand. If you object to any interrogatory, the reasons for the objection shall be stated with specificity.

Issued at Sacramento, California, on March 17, 2025.

Michele Beckwith

Michele Beckwith
Acting U.S. Attorney
Eastern District of California

CC: William C. Daniel

CID NO. 2025-EDCA-0010

## ATTACHMENT A

## Instructions

1. Unless otherwise stated in any specific request below, the relevant time period is January 1, 2020, to the present.

2. Please produce imaged hard copy and electronic documents according to the **Specifications for Production of Electronically Stored Information and Digitized Images** in the **APPENDIX**.

3. This Demand is continuing in nature. If you become aware of or acquire possession, custody, or control of additional documents that are responsive to this Demand, you shall promptly produce such additional documents.

4. This Demand applies to all documents and information in your possession, custody, or control regardless of their location and regardless of whether such documents or information are held by your current or former employees, including, but not limited to, in-house IT specialists and technicians, and IT specialists and technicians to whom digital services have been outsourced.

5. All documents produced pursuant to this Demand are to be organized in such a manner that all documents relating to a particular request are grouped together and identified as being responsive to that request.

6. If any document that is otherwise responsive to this Demand is not disclosed because of a claim of privilege or other objection, you shall identify such document on a Privilege Log. The Privilege Log shall be produced in Excel or Word format and include the following information:

(a) the basis for the assertion of the privilege or objection;

(b) the type of document (e.g., letter, memorandum, email, etc.);

(c) the name(s) and title(s) of the author(s) (and if different, the preparer(s) and signatory(ies));

(d) the name(s) and title(s) of the individual(s) to whom the document was addressed;

(e) the name(s) and title(s) of the individual(s) to whom the document or a copy of the document was sent or to whom the document or a copy, or any part thereof, was shown;

(f) the date of the document;

(g) the number of pages;

(h) a general description of the subject matter; and

(i) the document request(s) to which the document is responsive.

7. When a requested document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible. If a privilege is asserted with regard to a part of the material contained in a document, the party claiming the privilege must clearly indicate the portions as to which the privilege is claimed. When a document is redacted or altered in any fashion, identify as to each document the reason for the redaction or alteration, the date of the redaction or alteration, and the person performing the redaction or alteration. Any redaction must be clearly visible on the redacted document.

8. If any document otherwise responsive to this Demand is not produced because it was lost, destroyed, or discarded:

(a) identify the document by type, date, and title;

(b) identify the person who last had possession, custody, or control over the document;

(c) state the date on which the document was destroyed or was discovered to have been lost;

(d) if the document was destroyed, state why it was destroyed and identify the person(s) who destroyed it;

(e) if the document was lost, describe the circumstances in which its loss was discovered, state the date that it was last seen or otherwise accounted for, and identify the person(s) who discovered its loss and who last saw or otherwise accounted for it;

(f) identify all persons who have knowledge pertaining to the destruction or loss of the document, giving a concise but complete statement of the knowledge you claim each such person has;

(g) identify all persons who have knowledge of the contents of each lost or destroyed document, giving a concise but complete statement of the knowledge you claim each such person has; and

(h) produce all existing indices, lists, or other documents in your possession, custody, or control that reflect the existence of such lost or destroyed documents, and/or their transfer, loss, or destruction.

9. If no documents responsive to a specific document request exist, a written statement to that effect shall be provided at the time of production.

10. If any document responsive to this Demand is in the possession, custody, or control of a third party, a written statement to that effect shall be provided at the time of production, providing the name, address, telephone number, and principal contact of any such third party.

## Definitions

1. As used herein, the terms "you" or "your" shall refer to BitCasas and any of its predecessors, successors, affiliates, subsidiaries, parent companies, branches, divisions, offices, units, officers, directors, employees, agents, and assigns.

2. "Communication" is used in the broadest sense permitted by Federal Rule of Civil Procedure 26(b), 34(a), and 45(a) and means any transmission of information orally or in writing.

3. "Document" and "Documents" are used in the broadest sense permitted by Federal Rule of Civil Procedure 26(b), 34(a), and 45(a) and mean not only writings set forth on paper but also information that has been recorded, stored, or transmitted on any medium, including, but not limited to, electronically stored information, electronic mail, audio recordings, video recordings, photographs, text messages, voice messages, instant messages, social or professional media messages or postings, and information stored in tablet applications.

4. "Employee" shall mean any person including, but not limited to, an employee, volunteer, independent contractor, agent, director, officer, representative, accountant, advisor, and consultant who acted or purported to act on your behalf or who performed any service for you under your name, whether on a full-time, part-time, piecework, commission, or other basis and whether paid or unpaid.

5. "Payroll costs" shall mean the sum of payments of any compensation with respect to an employee that is a salary, wage, commission, or similar compensation; payment of cash tip or equivalent; payment for vacation, parental, family, medical, or sick leave; allowance for dismissal or separation; payment required for the provisions of group health care or group life, disability, vision, or dental insurance benefits, including insurance premiums; payment of any retirement benefit; or payment of state or local tax assessed on the compensation of employees.

6. The term "PPP" means the Paycheck Protection Program established by Section 1102 of the Coronavirus Aid, Relief, and Economic Security Act.

7. The term "SBA" means the U.S. Small Business Administration.

8. "Relating to" and "related to" mean consisting of, concerning, pertaining to, referring to, reflecting, supporting, evidencing, prepared in connection with, used in preparation for, or being in any way legally, logically, or factually connected to the matter discussed.

9. The terms "and" and "or" shall be construed conjunctively or disjunctively so as to make each particular request inclusive rather than exclusive.

10. The terms "any" and "all" shall be construed conjunctively or disjunctively so as to make each particular request inclusive rather than exclusive.

11. The singular and plural forms of any word shall be construed interchangeably so as to bring within the scope of this Demand any document which might otherwise be construed as outside its scope.

## ATTACHMENT B

## DOCUMENT REQUESTS

1. All documents or communications relating to each PPP loan disbursed to BitCasas.

2. All documents or communications relating to each of BitCasas' PPP loan applications, including the filed applications, attachments, supporting documentation, draft applications, worksheets, disclosures, communications with U.S. Bank or any other financial institution, and communications with the SBA.

3. All documents or communications relating to each of BitCasas' applications for PPP loan forgiveness, including the filed applications, attachments, supporting documentation, draft applications, worksheets, disclosures, communications with U.S. Bank or any other financial institution, and communications with the SBA.

4. All documents or communications relating to BitCasas' eligibility for PPP loans, including documents or communications relating to BitCasas' understanding of its eligibility and BitCasas' certifications that it was eligible.

5. All documents or communications relating to BitCasas' eligibility for PPP loan forgiveness, including documents or communications relating to BitCasas' understanding of its eligibility and BitCasas' certifications that it was eligible.

6. All documents or communications relating to disbursement of PPP loan funds to BitCasas.

7. All documents or communications showing BitCasas' payroll costs for 2018, 2019, 2020, and 2021.

8. All documents or communications showing BitCasas' payments of interest on mortgage obligations, rent payments, and utility payments for 2018, 2019, 2020, and 2021.

9. Documents sufficient to show all expenses paid by BitCasas using PPP loan funds, including the purpose(s) of the expenses.

10. Documents sufficient to show the identities and positions of BitCasas' principals and managerial employees during the relevant time period.

11. Documents, such as organizational diagrams or charts, sufficient to show BitCasas' organizational and managerial structures during the relevant time period.

12. Documents, such as organizational diagrams or charts, sufficient to show BitCasas' affiliated entities and their organizational relationship with BitCasas during the relevant time period.

13. BitCasas' signed and filed federal tax returns, including all schedules, certified by the Internal Revenue Service, for 2018, 2019, 2020, 2021, and 2022, including the tax returns for all of BitCasas' affiliated entities.

14. All documents relating to BitCasas' document retention policies, including policies concerning the retention of electronically stored information and emails.

15. All documents used in drafting responses to the interrogatories in Attachment C.

**ATTACHMENT C**

**INTERROGATORIES**

1. For each PPP loan received by BitCasas, identify the PPP loan number, the loan amount, and the loan amount forgiven.

2. Describe BitCasas' business structure and tax status under the Internal Revenue Code for 2018, 2019, 2020, and 2021.

3. Identify each of BitCasas' employees for 2018, 2019, 2020, and 2021, including each person's name, position, and contact information (business address, phone number, and email address).

4. Identify the total annual payroll costs for each employee of BitCasas for 2018, 2019, 2020, and 2021.

5. Identify BitCasas' total payments for rent, utilities, and interest on mortgage obligations for 2018, 2019, 2020, and 2021.

6. Identify each expense for which BitCasas used PPP loan funds, including its amount and purpose.

7. Identify the owner(s) of each of BitCasas' affiliated entities, as provided on the entity's filed federal tax returns. If an owner is an irrevocable trust, list that trust as the owner. If an owner is a revocable trust, also identify the individual creator(s) of the trust. If an owner is a company or companies, also identify the owner(s) of the company(ies).

8. Identify all people who participated or were involved in BitCasas' decision(s) to apply for loans under the PPP, including each person's name, position, and contact information (business address, phone number, and email address).

9. Identify all people who participated or were involved in BitCasas' decision(s) to apply for loan forgiveness under the PPP, including each person's name, position, and contact information (business address, phone number, and email address).

10. Describe the steps taken by BitCasas to determine whether it was eligible to receive PPP loans, including the specific loan amounts requested, prior to submitting any such loan application.

11. Describe the steps taken by BitCasas to determine whether it was eligible to receive PPP loan forgiveness, including the specific amounts requested to be forgiven, prior to submitting any such loan forgiveness application.

12. Identify any documents or communications outside your possession, custody, or control that pertain to BitCasas' eligibility to receive loans under the PPP, including each document's type, date, title, and last known location.

13. Identify any documents or communications outside your possession, custody, or control that pertain to BitCasas' eligibility for loan forgiveness under the PPP, including each document's type, date, title, and last known location.

14. Identify the people most knowledgeable regarding the matters addressed in this Demand, including each person's name, position, and contact information (business address, phone number, and email address).

15. Identify all people who were involved in drafting responses to these interrogatories, including each person's name, position, and contact information (business address, phone number, and email address).

16. Identify all documents that were used in drafting responses to these interrogatories, including each document's type, date, and title.

CID NO. 2025-EDCA-0010

## APPENDIX

## SPECIFICATIONS FOR PRODUCTION OF ELECTRONICALLY STORED INFORMATION (ESI) AND DIGITIZED ("SCANNED") IMAGES ("PRODUCTION SPECIFICATIONS")

Careful consideration should be given to the methodology, implementation and documentation of ESI collection to ensure that all responsive data and metadata are preserved in the collection process.

### 1. SPECIFICATION MODIFICATIONS

Any modifications or deviations from the Production Specifications may be done only with the express permission of the government and these modifications or deviations should be communicated to the government and approved by the government in written form. Any responsive data or documents that exist in locations or native forms not discussed in these Production Specifications remain responsive and, therefore, arrangements should be made with the government to facilitate their production.

### 2. PRODUCTION FORMAT OF ESI AND IMAGED HARD COPY

Responsive ESI and imaged hard copy shall be produced in the format outlined below. All ESI, except as outlined below in sections 5 – 20, shall be rendered to TIFF image format, and must be accompanied by the following files:

**a.** **Concordance.dat** (All applicable metadata (see section 3 below) shall be extracted and provided in Concordance® load file format.

**b.** **Ipro.lfp** (Or alternatively a Concordance® Image Cross Reference file - .opt).

**c.** **IproOCR.lfp** file.

**d.** **Image File Format** must be in the following format:

All images, paper documents scanned to images, or rendered ESI, shall be produced as 300 dpi single-page TIFF files, CCITT Group IV (2D Compression). Images should be uniquely and sequentially Bates numbered and unless otherwise specified, Bates numbers should be an endorsement on each image.

- All TIFF file names shall include the unique Bates number burned into the image. (See paragraph 21, below, regarding Bates number instructions.)
  - Each Bates number shall be a standard length, include leading zeros in the number, and be unique for each produced page.
  - All TIFF image files shall be stored with the ".tif" extension.
  - Images shall be OCR'd using standard COTS products.
    - An exception report shall be provided when limitations of paper digitization software/hardware or attribute conversion do not allow

for OCR text conversion of certain images. The report shall include the DOCID or Bates number(s) corresponding to each such image.

- All pages of a document or all pages of a collection of documents that comprise a folder or other logical grouping, including a box, shall be delivered on a single piece of media.
- No image folder shall contain more than 2000 images.

e. **Ipro.lfp and IproOCR.lfp or in the alternative Concordance® Image Cross Reference file:** Images should be accompanied by an Ipro.lfp and IproOCR.lfp file or in the alternative a Concordance® Image Cross Reference file that associates each Bates number with its corresponding single-page TIFF image file. The Cross Reference file should also contain the image file path for each Bates numbered page.

- Ipro.lfp file format:

```
IM, ABC00000001,D,0,@2015_1211;DatabaseName\Images\001; ABC00000001.tif;2,0
IM, ABC00000002,,0,@2015_1211;DatabaseName\Images\001; ABC00000002.tif;2,0
IM, ABC00000003,,0,@2015_1211;DatabaseName\Images\001; ABC00000003.tif;2,0
IM, ABC00000004,D,0,@2015_1211;DatabaseName\Images\001; ABC00000004.tif;2,0
```

- Image Cross Reference Sample Format:

```
ABC00000001,OLS,D:\DatabaseName\Images\001\ ABC00000001.TIF,Y,,,
ABC00000002,OLS:\DatabaseName\Images\001\ ABC00000002.TIF,,,,
ABC00000003,OLS:\DatabaseName\Images\001\ ABC00000003.TIF,,,,
ABC00000004,OLS,D:\DatabaseName\Images\001\ ABC00000004.TIF,Y,,,
```

f. **Concordance® Load File:** Images should also be accompanied by a "text load file" containing delimited text that will populate fields in a searchable, flat database environment. The file should contain the required fields listed below in section 3.

- Text delimited load files are defined using the standard Concordance delimiters. For example:

| | |
|---|---|
| *Field Separator* | *¶ or Code 020* |
| *Text Qualifier* | *þ or Code 254* |

- The text file should also contain hyperlinks to applicable native files, such as Microsoft Excel, PowerPoint, Audio or Video files.
- There should be one line for every record in a collection.
- The load file must contain a header listing the metadata/database fields contained within in the order they appear within the data file. For example, if the data file consists of a First Page of a Record (BegDoc), Last Page of a Record (EndDoc), DOCID, DOCDate, File Name, and a Title, then the structure may appear as follows:

þBEGDOCþ¶þENDDOCþ¶þDOCIDþ¶þDOCDATEþ¶þFILENAMEþ¶þTITLEþ

g. **The extracted/OCR text** for each document should be provided as a separate single text file. The file name should match the BEGDOC or DOCID for that specific record and be accompanied by the .txt extension.

h. **Directory and folder structure:** The directory structure for productions should be:

*CaseName***LoadFiles**
*CaseName***Images** < For supporting images (can include subfolders as needed should not include more than 2,000 files per folder)
*CaseName***Natives** <Native Files location (can include subfolders as needed should not include more than 2,000 files per folder)
*CaseName***Text** <Extracted Text files location (can include subfolders as needed should not include more than 2,000 files per folder)

3. **REQUIRED METADATA/DATABASE FIELDS**

- A "✓" denotes that the indicated field should be present in the load file produced.
- "Other ESI" includes data discussed in sections 5 – 20 below, but does not include email, email repositories (section 11), "stand alone" items (section 12), and imaged hard copy material (section 9). Email, email repositories, and "stand alone" materials (section 12) should comply with "Email" column below. Imaged hard copy materials should comply with the "Hard Copy" column.

CID NO. 2025-EDCA-0010

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|---|---|
| BEGDOC | Start Bates (including prefix) - No spaces | Text | 60 | ✓ | ✓ | ✓ |
| ENDDOC | End Bates (including prefix) - No spaces | Text | 60 | ✓ | ✓ | ✓ |
| BEGATTACH | Start Bates number of first attachment | Text | 60 | ✓ | ✓ | ✓ |
| ENDATTACH | End Bates number of last attachment | Text | 60 | ✓ | ✓ | ✓ |
| DOCID | Unique document Bates # or populate with the same value as Start Bates (DOCID = BEGDOC#) | Text | 60 | ✓ | ✓ | ✓ |
| PAGECNT | Page Count | Number | 10 | ✓ | ✓ | ✓ |
| COLLECTION SOURCE | Name of the Company/Organization data was collected from | Text | 160 | ✓ | ✓ | ✓ |
| SOURCE ID (BOX #) | Submission/volume/box number | Text | 10 | ✓ | ✓ | ✓ |
| CUSTODIAN | Custodian/Source - format: Last, First or ABC Dept. | Text | 160 | ✓ | ✓ | ✓ |
| AUTHOR | Creator of the document | Text | 500 | | | ✓ |
| GROUPID | Contains the Group Identifier for the family, in order to group files with their attachments | Text | 60 | | ✓ | ✓ |
| PARENTID | Contains the Document Identifier of an attachment's parent | Text | 60 | | ✓ | ✓ |
| ATTACHIDS | Child document list; Child DOCID or Child Start Bates | Text – semicolon delimited | Unlimited | ✓ | ✓ | ✓ |
| ATTACHLIST | List of Attachment filenames | Text – semicolon delimited | Unlimited | | ✓ | ✓ |
| PROPERTIES | Privilege notations, Redacted, Document Withheld Based On Privilege | Text – semicolon delimited | Unlimited | ✓ | ✓ | ✓ |
| DOCTYPE | Use the following choices: Image, Loose E-mail, E-mail, E-Doc, Attachment, Hard Copy or Other. If using Other, please specify what type after Other | Text | 60 | ✓ | ✓ | ✓ |
| FROM | Author - format: Last name, First name. | Text | 160 | | ✓ | ✓ |
| TO | Recipient - format: Last name, First name. | Text – semicolon delimited | Unlimited | | ✓ | ✓ |

CID NO. 2025-EDCA-0010

| | | | | | | |
|---|---|---|---|---|---|---|
| CC | Carbon Copy Recipients - format: Last name, First name. | Text – semicolon delimited | Unlimited | | ✓ | ✓ |
| BCC | Blind Carbon Copy Recipients - format: Last name, First name. | Text – semicolon delimited | Unlimited | | ✓ | ✓ |
| SUBJECT | Subject line/Document Title | Text | Unlimited | | ✓ | ✓ |
| EMAIL SUBJECT | Subject line for Emails | Text | Unlimited | | ✓ | ✓ |
| CONVINDEX | E-mail system ID used to track replies, forwards, etc. | Text | Unlimited | | ✓ | |
| DATE MODIFIED | DATE ONLY - Last Modified Date for files and Sent date for e-mail, this field inherits the date for attachments from their parent. | Date | MM/DD/YYYY | | ✓ | ✓ |
| DATE SENT | DATE ONLY - Date Sent for files and Sent date for e-mail, this field inherits the date for attachments from their parent. | Date | MM/DD/YYY | | ✓ | ✓ |
| TEXT FILEPATH | Relative file path of the text file associated with either the extracted text or the OCR | Text | Unlimited | ✓ | ✓ | ✓ |
| DATE TIME SENT | Date Sent (USE TIME ZONE OF COLLECTION LOCALITY) | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | ✓ |
| DATE TIME CRTD | Date Created (USE TIME ZONE OF COLLECTION LOCALITY) | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | ✓ |
| DATE TIME SVD | Date Saved (USE TIME ZONE OF COLLECTION LOCALITY) | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | ✓ |
| DATE TIME MOD | Date Last Modified (USE TIME ZONE OF COLLECTION LOCALITY) | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | ✓ |
| DATE TIME RCVD | Date Received (USE TIME ZONE OF COLLECTION LOCALITY) | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | |
| DATE TIME ACCD | Date Accessed (USE TIME ZONE OF COLLECTION LOCALITY) | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | ✓ |
| FILE SIZE | Native File Size in bytes | Number | 10 | | | ✓ |
| FILENAME | File name - name of file as it appeared in its original location | Text | Unlimited | | | ✓ |
| APPLICATION | Application used to create native file (e.g. Excel, Outlook, Word) | Text | 160 | | ✓ | ✓ |
| FILE EXTENSION | Extension for the file (e.g. .doc, .pdf, .wpd) | Text | 10 | | ✓ | ✓ |

CID NO. 2025-EDCA-0010

| | | | | | | |
|---|---|---|---|---|---|---|
| FILEPATH | Data's original source full folder path | Text | Unlimited | | √ | √ |
| NATIVE LINK | Relative file path location to the native file | Text | Unlimited | | √ | √ |
| FOLDER ID | Complete E-mail folder path (e.g. Inbox\Active) or Hard Copy container information (e.g. folder or binder name) | Text | Unlimited | √ | √ | √ |
| PARAGRAPH REQUEST NUMBER | Subpoena/request paragraph number to which the document is responsive. Use semicolon to delimit multiple entries. | Text – semicolon delimited | Unlimited | √ | √ | √ |
| MD5_HASH | MD5 Hash value (used for deduplication or other processing) (e-mail hash values must be run with the e-mail and all of its attachments) | Text | Unlimited | | √ | √ |
| MESSAGEHEADER | E-mail header. Can contain IP address | Text | Unlimited | | √ | |
| ATTACHMCOUNT | Number of attachments (any level child document) associated with a ParentID | Text | 10 | | √ | |
| FILE TYPE | Identifies the application that created the file Type of file, not to be confused with file extension | Text | 160 | | √ | √ |
| COMMENTS | Identifies whether the document has comments associated with it | Text | 10 | | √ | √ |
| MESSAGE TYPE | Exchange Message class or equivalent | Text | 60 | | √ | |
| EXTENDED PROPERTIES | For PDFs Only | Text | 600 | | √ | √ |

## 4. SEARCH, DE-DUPLICATION, NEAR-DUPLICATE IDENTIFICATION, E-MAIL CONVERSATION THREADING AND OTHER CULLING PROCEDURES

De-duplication of exact copies within a custodian's data may be done at the family level, but all file paths and custodians must be provided for each duplicate document in an exception report in .csv format. The recipient shall not use any other procedure to cull, filter, group, separate or de-duplicate, or near-deduplicate, etc. (i.e., reduce the volume of) responsive material before discussing with and obtaining the written approval of the government. All objective coding (e.g., near duplicate ID or e-mail thread ID) shall be discussed and produced to the government as additional metadata fields. The recipient will not employ analytic software or technology to search identify, or review potentially responsive material, including but not limited to technology assisted review (TAR) or predictive coding, without first discussing with the government.

**5. HIDDEN TEXT**

All hidden text (e.g. track changes, hidden columns, mark-ups, notes) shall be expanded and rendered in the image file. For files that cannot be expanded the native files shall be produced with the image file.

**6. EMBEDDED FILES**

All non-graphic embedded objects (Word documents, Excel spreadsheets, .wav files, etc.) that are found within a file shall be extracted and produced. For purposes of production, the embedded files shall be treated as attachments to the original file, with the parent/child relationship preserved.

**7. IMAGE-ONLY FILES**

All image-only files (non-searchable .pdfs, multi-page .tiffs, Snipping Tool and other screenshots, etc., as well as all other images that contain text) shall be produced with associated OCR text and metadata/database fields identified in section 3 for "Other ESI."

**8. ENCRYPTED FILES**

Any data (whether individual files or digital containers) that is protected by a password, encryption key, digital rights management, or other encryption scheme, shall be decrypted prior to processing for production.

**a.** The unencrypted text shall be extracted and provided per section 2.c. The unencrypted files shall be used to render images and provided per sections 2.a and 2.b. The unencrypted native file shall be produced pursuant to sections 10-20.

**b.** If such protected data is encountered but unable to be processed, each file or container shall be reported as an exception in the accompanying Exception Report (pursuant to section 26) and shall include all available metadata associated with the data, including custodian information.

**9. PRODUCTION OF IMAGED HARD COPY RECORDS**

All imaged hard copy material shall reflect accurate document unitization including all attachments and container information (to be reflected in the PARENTID, ATTACHID, BEGATTACH, ENDATTACH and FOLDERID).

**a.** Unitization in this context refers to identifying and marking the boundaries of documents within the collection, where a document is defined as the smallest physical fastened unit within a bundle. (e.g., staples, paperclips, rubber bands, folders, or tabs in a binder).

**b.** The first document in the collection represents the parent document and all other documents will represent the children.

**c.** All imaged hard copy documents shall be produced as 300 dpi single-page TIFF files, CCITT Group IV (2D Compression). All documents shall be produced in black and white TIFF format unless the image requires color. An image requires color when color in the document adds emphasis to information in the document or is itself

information that would not be readily apparent on the face of a black and white image. Images identified as requiring color shall be produced as color 300 dpi single-page JPEG files.

**d.** All objective coding (e.g., document date or document author) should be discussed and produced to the government as additional metadata/database fields.

### 10. PRODUCTION OF SPREADSHEETS AND PRESENTATION FILES

All spreadsheet and presentation files (e.g. Excel, PowerPoint) shall be produced in the unprocessed "as kept in the ordinary course of business" state (i.e., in native format), with an associated placeholder image and endorsed with a unique Bates number. *See* section 20 below. The file produced should maintain the integrity of all source, custodian, application, embedded and related file system metadata. No alteration shall be made to file names or extensions for responsive native electronic files. The file shall include a text file with the extracted text named with the same corresponding unique Bates number specified above.

### 11. PRODUCTION OF E-MAIL REPOSITORIES

E-mail repositories, also known as e-mail databases (e.g., Outlook PST, Lotus NSF, etc.), can contain a variety of items, including: messages, calendars, contacts, tasks, etc. For purposes of production, responsive items shall include the "E-mail" metadata/database fields outlined in section 3, including but not limited to all parent items (mail, calendar, contacts, tasks, notes, etc.) and child files (attachments of files to e-mail or other items) with the parent/child relationship preserved. Our preferred format for e-mail productions is PST. E-mail should NOT be provided in X400 or X500 format. E-mail databases from systems other than Microsoft Exchange shall be produced after consultation with and written consent of the government about the format for the production of such databases.

### 12. PRODUCTION OF ITEMS ORIGINALLY GENERATED IN E-MAIL REPOSITORIES BUT FOUND AND COLLECTED OUTSIDE OF E-MAIL REPOSITORIES, I.E., "STAND-ALONE" ITEMS

Any parent e-mail or other parent items (e.g., calendar, contacts, tasks, notes, etc.) found and collected outside of e-mail repositories (e.g., items having extensions .msg, .htm, .mht, etc.), shall be produced with the "Loose E-mail" metadata fields outlined in section 3, including but not limited to any attachments, maintaining the family (parent/child) relationship.

### 13. PRODUCTION OF INSTANT MESSENGER (IM), VOICEMAIL DATA, AUDIO DATA, VIDEO DATA, ETC.

The responding party shall identify, collect, and produce any and all data which is responsive to the requests which may be stored in audio or video recordings, cell phone/PDA/Blackberry/smart phone data, tablet data, voicemail messaging data, instant messaging, text messaging, conference call data, video/audio conferencing (e.g., GoTo Meeting, WebEx), and related/similar technologies. However, such data, logs, metadata or other files related thereto, as well as other less common but similar data types, shall be produced after consultation with and written consent of the government about the format for the production of such data.

## 14. PRODUCTION OF SOCIAL MEDIA

Prior to any production of responsive data from social media (e.g., Twitter, Facebook, Google+, LinkedIn, etc.) the producing party shall first discuss with the government the potential export formats before collecting the information, to ensure it is collected and produced in a way that preserves the original metadata, has a clear chain of custody, and provides as much information as possible regarding the source and history of each individual communication.

Social media platforms offer different functions, forms of content, and capability for downloading accounts. Because of these differences, prior to collection of social media data, the producing party must discuss with the government the available export and production methods and formats that the producing party is considering. Unless the government agrees to an alternative in writing, regardless of the social media platform, productions of social media content must meet the following general requirements: (1) separate (2) searchable (3) static images of (4) each responsive posting on the social media platform, (5) all related content (e.g., comments, likes, share or re-transmittal information, images, videos, linked documents and content), and (6) associated metadata (e.g., user name(s), date, and time of all posts, comments, likes, share or re-transmittals).

These general requirements are in addition to any more specific requirements in a particular request (e.g., geolocation data), and the producing party must ask the government about any perceived conflict between these requirements and another source of specifications or requirements. If available from the social media platform or through social media data processing software, files that facilitate interactive review of the data (i.e., html files) as well as load files in .csv format must be produced with the associated content.

## 15. PRODUCTION OF STRUCTURED DATA

Prior to any production of responsive data from a structured database (e.g., Oracle, SAP, SQL, MySQL, QuickBooks, etc.), the producing party shall first identify the database type and version number, provide the database dictionary and any user manuals, or any other documentation describing the structure and/or content of the database and a list of all reports that can be generated from the database. The list of reports shall be provided in native Excel (.xls or .xlsx) format.

## 16. PRODUCTION OF STRUCTURED DATA FROM PROPRIETARY APPLICATIONS

Prior to any production of structured data from proprietary applications (e.g., proprietary timekeeping, accounting, sales rep call notes, CRMs, SharePoint etc.) the producing party shall first provide the database dictionary and a list of all reports that can be generated from the structured database. The list of reports shall be produced in native Excel (.xls or .xlsx) format.

## 17. PRODUCTION OF PHOTOGRAPHS WITH NATIVE FILE OR DIGITIZED ESI

Photographs shall be produced as single-page JPEG files with a resolution equivalent to the original image as they were captured/created. All JPEG files shall have extracted metadata/database fields provided in a Concordance® load file format as outlined in section 3 for "Other ESI."

**18. PRODUCTION OF IMAGES FROM WHICH TEXT CANNOT BE OCR CONVERTED**

An exception report shall be provided when limitations of paper digitization software/hardware or attribute conversion do not allow for OCR text conversion of certain images. The report shall include the DOCID or Bates number(s) corresponding to each such image.

**19. PRODUCTION OF ESI FROM NON-PC OR NON-WINDOWS-BASED SYSTEMS**

If responsive ESI is in non-PC or non-Windows-based Systems (e.g., Apple, IBM mainframes, and UNIX machines, Android device, etc.), the ESI shall be produced after discussion with and written consent of the government about the format for the production of such data.

**20. PRODUCTION OF NATIVE FILES (WHEN APPLICABLE PURSUANT TO THESE SPECIFICATIONS)**

Production of native files, as called for in these specifications, shall have extracted metadata/database fields provided in a Concordance® load file format as defined in the field specifications for "Other ESI" as outlined in section 3.

ESI shall be produced in a manner which is functionally usable by the government. The following are examples:

**a.** AutoCAD data, e.g., DWG and DXF files, shall be processed/converted and produced as single-page JPG image files and accompanied by a Concordance® Image formatted load file as described above. The native files shall be placed in a separate folder named "NATIVES" on the production media and linked by a hyperlink within the text load file.

**b.** GIS data shall be produced in its native format and be accompanied by a viewer such that the mapping or other data can be reviewed in a manner that does not detract from its ability to be reasonably understood.

**c.** Audio and video recordings shall be produced in native format and be accompanied by a viewer if such recordings do not play in a generic application (e.g., Windows Media Player).

**21. BATES NUMBER CONVENTION**

All images should be assigned a unique Bates numbers before production to the government. Each Bates number shall be a standard length, include leading zeros in the number, and be unique for each produced page. The numbers should be endorsed on the actual images at a location that does not obliterate, conceal, or interfere with any information from the source document. Native files should be assigned a single Bates number for the entire file which will represent the native document in the load/dat file. The load/dat file will include a reference to the native file path and utilize the NATIVELINK metadata field). The Bates number shall not exceed 30 characters in length and shall include leading zeros in the numeric portion. The Bates number shall be a unique number given to each page (when assigned to an image) or to each document (when assigned to a native file). If the parties agree to a rolling production, the numbering convention shall remain consistent throughout

the entire production. There shall be no spaces between the prefix and numeric value. If suffixes are required, please use "dot notation." Below is a sample of dot notation:

| | |
|---|---|
| PREFIX_0000001 | PREFIX_0000003 |
| PREFIX0000001 | PREFIX0000003 |
| PREFIX0000001.001 | PREFIX0000003.001 |
| PREFIX0000001.002 | PREFIX0000003.002 |

## 22. MEDIA FORMATS FOR STORAGE AND DELIVERY OF PRODUCTION DATA

Electronic documents and data shall be delivered on any of the following media:

- **a.** CD-ROMs and/or DVD-R (+/-) formatted to ISO/IEC 13346 and Universal Disk Format 1.02 specifications; Blu-ray.
- **b.** External hard drives (USB 3.0 or higher, Firewire or eSATA, formatted to NTFS format specifications) or flash drives.
- **c.** Storage media used to deliver ESI shall be appropriate to the size of the data in the production.
- **d.** Media should be labeled with the case name, production date, Bates range, and producing party.

## 23. VIRUS PROTECTION AND SECURITY FOR DELIVERY OF PRODUCTION DATA

Production data shall be free of computer viruses. Any files found to include a virus shall be quarantined by the producing party and noted in a log to be provided to the government. Password protected or encrypted files or media shall be provided with corresponding passwords and specific decryption instructions. No encryption software shall be used without the written consent of the government.

## 24. COMPLIANCE AND ADHERENCE TO GENERALLY ACCEPTED TECHNICAL STANDARDS

Production shall be in conformance with standards and practices established by the National Institute of Standards and Technology ("NIST" at www.nist.gov), U.S. National Archives & Records Administration ("NARA" at www.archives.gov), American Records Management Association ("ARMA International" at www.arma.org), American National Standards Institute ("ANSI" at www.ansi.org), International Organization for Standardization ("ISO" at www.iso.org), and/or other U.S. Government or professional organizations.

## 25. READ ME TEXT FILE

All deliverables shall include a "read me" text file at the root directory containing: total number of records, total number of images/pages or files, mapping of fields to plainly identify field names, types, lengths, and formats. The file shall also indicate the field name to which images will be linked for viewing, date and time format, and confirmation that the number of files in load files matches the number of files produced.

### 26. EXCEPTION REPORT

An exception report, in .csv format, shall be included, documenting any production anomalies utilizing the electronic Bates number (DOCID or control numbering) assigned during the collection, processing, and production phases.

### 27. TRANSMITTAL LETTER TO ACCOMPANY DELIVERABLES

All deliverables should be accompanied by a transmittal letter including the production date, case name and number, producing party name, and Bates number range produced.

CID NO. 2025-EDCA-0010

**DECLARATION OF COMPLIANCE**

(Documents)

I have responsibility for producing the documents requested by this Civil Investigative Demand. I hereby certify that all the documentary material required by the Civil Investigative Demand and in the possession, custody, or control of BitCasas, Inc., has been produced to the false claims law investigator or custodian named therein.

If any such material has not been produced because of a lawful objection, the objection to the document request and the reasons for the objection have been stated.

I declare under penalty of perjury under the laws of the United States of America (28 U.S.C. § 1746) that the forgoing is true and correct.

Executed on __________
Date

______________________________
Printed Name

______________________________
Title

______________________________
Signature

CID NO. 2025-EDCA-0010

## DECLARATION OF CUSTODIAN OF RECORDS

(Documents)

I, the undersigned, being the duly authorized Custodian of Records and having authority to certify the attached records, declare the following:

☐ CERTIFICATION OF RECORDS COPIED

A. The attached records were (1) made at or near the time of the acts, events, or conditions set forth therein by, or from information transmitted by, a person with knowledge of those matters, (2) kept in the course of BitCasas' regularly conducted activities, and (3) made pursuant to a regular practice of those regularly conducted activities, per Fed. R. Evid. 902(11).

B. The records provided are true copies of all the documents described in the Civil Investigative Demand presented to me, or the original records were provided to the attorney or the attorney's representative for copying at our place of business.

☐ CERTIFICATION OF NO RECORDS

A. A thorough search of our organization's files, carried out under my direction, revealed no documents or records requested in the Civil Investigative Demand presented to me.

B. It is understood that such documents or records could exist under another spelling, name, or classification, but with the information furnished to our organization, and to the best of our knowledge, no such records exist in our possession, custody, or control.

I declare under penalty of perjury under the laws of the United States of America (28 U.S.C. § 1746) that the forgoing is true and correct.

Executed on __________
Date

______________________________
Printed Name

______________________________
Title

______________________________
Signature

CID NO. 2025-EDCA-0010

## DECLARATION OF COMPLIANCE
(Interrogatories)

I have responsibility for answering the written interrogatories provided in this Civil Investigative Demand. I hereby certify that all the information required by the Civil Investigative Demand and in the possession, custody, control, or knowledge of the person to whom the Demand is directed has been submitted to the false claims law investigator or custodian identified therein. I certify under penalty of perjury under the laws of the United States of America that the interrogatory responses are true and correct.

If any such information has not been furnished because of a lawful objection, the objection to the interrogatory and the reasons for the objection have been stated.

I declare under penalty of perjury under the laws of the United States of America (28 U.S.C. § 1746) that the forgoing is true and correct.

Executed on __________
Date

______________________________
Printed Name

______________________________
Title

______________________________
Signature

CID NO. 2025-EDCA-0010

**VERIFIED RETURN OF SERVICE**

I, Bonnie L. L'Argent, an employee of the United States working under the direction and supervision of Assistant U.S. Attorney Robert A. Fuentes in connection with a false claims law investigation, hereby certify that on March 17, 2025, I served Civil Investigative Demand No. 2025-EDCA-0010 on BitCasas, Inc., by delivering an executed copy of such Demand via Certified Mail, with a Return Receipt requested, to:

BitCasas, Inc.
c/o Kamran Mohammadi
Chief Executive Officer
Agent for Service of Process
161 N. Civic Drive #401
Walnut Creek, CA 94596

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 17, 2025, at Fresno, California.

Signature [signature] Bonnie L. L'Argent

Title Legal Assistant

9589 0710 5270 0300 1574 25

U.S. Postal Service™
CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Certified Mail Fee
$
Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy) $
☐ Return Receipt (electronic) $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required $
☐ A
Postage
$
Total
$
Sent
Street
City, State, ZIP+4®

Postmark Here

William C. Daniel
BitCasas, Inc.
7752 E. Camelback Road
Scottsdale, AZ 85251

PS Form 3800, January 2023 PSN 7530-02-000-9047 See Reverse for Instructions

9589 0710 5270 0300 1574 32

U.S. Postal Service™
CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Certified Mail Fee
$
Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy) $
☐ Return Receipt (electronic) $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required $
☐ Adult Signature Restricted Delivery $
Postage
$
Total Post
$
Sent To
Street and
City, State

Postmark Here

BitCasas, Inc.
c/o Kamran Mohammadi
Chief Executive Officer
Agent for Service of Process
161 N. Civic Drive #401
Walnut Creek, CA 94596

PS Form 3800, January 2023 PSN 7530-02-000-9047 See Reverse for Instructions

# Exhibit D

# USPS Tracking®

FAQs >

Tracking Number:

Remove ✕

## 9589071052700300157432

Copy Add to Informed Delivery (https://informeddelivery.usps.com/)

### Latest Update

Your item was delivered to an individual at the address at 9:09 am on March 24, 2025 in WALNUT CREEK, CA 94596.

**Get More Out of USPS Tracking:**

**USPS Tracking Plus®**

Feedback

### Delivered

**Delivered, Left with Individual**

WALNUT CREEK, CA 94596
March 24, 2025, 9:09 am

**See All Tracking History**

**What Do USPS Tracking Statuses Mean? (https://faq.usps.com/s/article/Where-is-my-package)**

**Text & Email Updates**

**USPS Tracking Plus®**

**Product Information**

**See Less**

Track Another Package

Enter tracking or barcode numbers

## Need More Help?

Contact USPS Tracking support for further assistance.

**FAQs**

# Exhibit E

CID NO. 2025-EDCA-0011

**U.S. DEPARTMENT OF JUSTICE**

*United States Attorney's Office*
*Eastern District of California*

*Michele Beckwith*
*Acting United States Attorney*

2500 Tulare Street, Suite 4401
Fresno, CA 93721

Phone 559/497-4000
Fax 559/497-4099
TTD 916/554-2855

# CIVIL INVESTIGATIVE DEMAND

No. 2025-EDCA-0011

March 17, 2025

VIA CERTIFIED MAIL

TO: LoanCoins, Inc.
c/o Kamran Mohammadi
Owner
161 N. Civic Drive #401
Walnut Creek, CA 94596

This Civil Investigative Demand ("Demand") is issued to LoanCoins, Inc., pursuant to 31 U.S.C. § 3733(a) in the course of an investigation to determine whether there are or have been violations of the False Claims Act, 31 U.S.C. § 3729. The U.S. Department of Justice is investigating whether LoanCoins submitted or caused to be submitted false or fraudulent claims—or made or caused to be made false records or statements material to false or fraudulent claims—relating to its application(s) for loans or loan forgiveness under the Paycheck Protection Program established by the Coronavirus Aid, Relief, and Economic Security Act, in violation of 31 U.S.C. § 3729(a)(1).

This Demand requires you to provide documents and answers to the Federal Government in response to the attached document requests and interrogatories. The information and documents provided in response to this Demand may be shared, used, and disclosed as provided by 31 U.S.C. § 3733.

## Document Requests

In accordance with the Instructions and Definitions set forth in **ATTACHMENT A**, you are required by this Demand to produce any and all documents in LoanCoins' possession, custody, or control that are responsive to the requests set forth in **ATTACHMENT B**. All documents should be

produced in accordance with the Instructions in **ATTACHMENT A** and the Production Specifications set forth in the **APPENDIX**.

You must make this material available to Assistant U.S. Attorney Robert A. Fuentes, who has been designated as a False Claims Act custodian in this case. These documents shall be produced no later than **30 days** from the receipt of this Demand at the United States Attorney's Office for the Eastern District of California, 2500 Tulare Street, Suite 4401, Fresno, CA 93721, or at such time and in such other location as may be mutually agreed upon by you and AUSA Fuentes. The production of documentary material in response to this Demand must be made under a sworn certificate in the form printed in this Demand. If you have any questions, AUSA Fuentes may be contacted at (559) 497-4059 or robert.fuentes@usdoj.gov.

## Written Interrogatories

In accordance with the Instructions and Definitions set forth in **ATTACHMENT A,** you are required by this Demand to answer the interrogatories provided in **ATTACHMENT C.** Your answers shall be submitted no later than **30 days** from the receipt of this Demand to AUSA Robert A. Fuentes at the United States Attorney's Office for the Eastern District of California, 2500 Tulare Street, Suite 4401, Fresno, CA 93721, or at such time and in such other place as may be agreed upon by you and AUSA Fuentes. The interrogatories shall be answered separately and fully in writing under oath and also shall be submitted under a sworn certificate in the form printed in this Demand. If you object to any interrogatory, the reasons for the objection shall be stated with specificity.

Issued at Sacramento, California, on March 17, 2025.

Michele Beckwith

Michele Beckwith
Acting U.S. Attorney
Eastern District of California

CC: Jeffrey M. McGaffick

CID NO. 2025-EDCA-0011

## ATTACHMENT A

### Instructions

1. Unless otherwise stated in any specific request below, the relevant time period is January 1, 2020, to the present.

2. Please produce imaged hard copy and electronic documents according to the **Specifications for Production of Electronically Stored Information and Digitized Images** in the **APPENDIX**.

3. This Demand is continuing in nature. If you become aware of or acquire possession, custody, or control of additional documents that are responsive to this Demand, you shall promptly produce such additional documents.

4. This Demand applies to all documents and information in your possession, custody, or control regardless of their location and regardless of whether such documents or information are held by your current or former employees, including, but not limited to, in-house IT specialists and technicians, and IT specialists and technicians to whom digital services have been outsourced.

5. All documents produced pursuant to this Demand are to be organized in such a manner that all documents relating to a particular request are grouped together and identified as being responsive to that request.

6. If any document that is otherwise responsive to this Demand is not disclosed because of a claim of privilege or other objection, you shall identify such document on a Privilege Log. The Privilege Log shall be produced in Excel or Word format and include the following information:

(a) the basis for the assertion of the privilege or objection;

(b) the type of document (e.g., letter, memorandum, email, etc.);

(c) the name(s) and title(s) of the author(s) (and if different, the preparer(s) and signatory(ies));

(d) the name(s) and title(s) of the individual(s) to whom the document was addressed;

(e) the name(s) and title(s) of the individual(s) to whom the document or a copy of the document was sent or to whom the document or a copy, or any part thereof, was shown;

(f) the date of the document;

(g) the number of pages;

(h) a general description of the subject matter; and

(i) the document request(s) to which the document is responsive.

7. When a requested document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible. If a privilege is asserted with regard to a part of the material contained in a document, the party claiming the privilege must clearly indicate the portions as to which the privilege is claimed. When a document is redacted or altered in any fashion, identify as to each document the reason for the redaction or alteration, the date of the redaction or alteration, and the person performing the redaction or alteration. Any redaction must be clearly visible on the redacted document.

8. If any document otherwise responsive to this Demand is not produced because it was lost, destroyed, or discarded:

(a) identify the document by type, date, and title;

(b) identify the person who last had possession, custody, or control over the document;

(c) state the date on which the document was destroyed or was discovered to have been lost;

(d) if the document was destroyed, state why it was destroyed and identify the person(s) who destroyed it;

(e) if the document was lost, describe the circumstances in which its loss was discovered, state the date that it was last seen or otherwise accounted for, and identify the person(s) who discovered its loss and who last saw or otherwise accounted for it;

(f) identify all persons who have knowledge pertaining to the destruction or loss of the document, giving a concise but complete statement of the knowledge you claim each such person has;

(g) identify all persons who have knowledge of the contents of each lost or destroyed document, giving a concise but complete statement of the knowledge you claim each such person has; and

(h) produce all existing indices, lists, or other documents in your possession, custody, or control that reflect the existence of such lost or destroyed documents, and/or their transfer, loss, or destruction.

9. If no documents responsive to a specific document request exist, a written statement to that effect shall be provided at the time of production.

10. If any document responsive to this Demand is in the possession, custody, or control of a third party, a written statement to that effect shall be provided at the time of production, providing the name, address, telephone number, and principal contact of any such third party.

## Definitions

1. As used herein, the terms "you" or "your" shall refer to LoanCoins and any of its predecessors, successors, affiliates, subsidiaries, parent companies, branches, divisions, offices, units, officers, directors, employees, agents, and assigns.

2. "Communication" is used in the broadest sense permitted by Federal Rule of Civil Procedure 26(b), 34(a), and 45(a) and means any transmission of information orally or in writing.

3. "Document" and "Documents" are used in the broadest sense permitted by Federal Rule of Civil Procedure 26(b), 34(a), and 45(a) and mean not only writings set forth on paper but also information that has been recorded, stored, or transmitted on any medium, including, but not limited to, electronically stored information, electronic mail, audio recordings, video recordings, photographs, text messages, voice messages, instant messages, social or professional media messages or postings, and information stored in tablet applications.

4. "Employee" shall mean any person including, but not limited to, an employee, volunteer, independent contractor, agent, director, officer, representative, accountant, advisor, and consultant who acted or purported to act on your behalf or who performed any service for you under your name, whether on a full-time, part-time, piecework, commission, or other basis and whether paid or unpaid.

5. "Payroll costs" shall mean the sum of payments of any compensation with respect to an employee that is a salary, wage, commission, or similar compensation; payment of cash tip or equivalent; payment for vacation, parental, family, medical, or sick leave; allowance for dismissal or separation; payment required for the provisions of group health care or group life, disability, vision, or dental insurance benefits, including insurance premiums; payment of any retirement benefit; or payment of state or local tax assessed on the compensation of employees.

6. The term "PPP" means the Paycheck Protection Program established by Section 1102 of the Coronavirus Aid, Relief, and Economic Security Act.

7. The term "SBA" means the U.S. Small Business Administration.

8. "Relating to" and "related to" mean consisting of, concerning, pertaining to, referring to, reflecting, supporting, evidencing, prepared in connection with, used in preparation for, or being in any way legally, logically, or factually connected to the matter discussed.

9. The terms "and" and "or" shall be construed conjunctively or disjunctively so as to make each particular request inclusive rather than exclusive.

10. The terms "any" and "all" shall be construed conjunctively or disjunctively so as to make each particular request inclusive rather than exclusive.

11. The singular and plural forms of any word shall be construed interchangeably so as to bring within the scope of this Demand any document which might otherwise be construed as outside its scope.

CID NO. 2025-EDCA-0011

**ATTACHMENT B**

**DOCUMENT REQUESTS**

1. All documents or communications relating to each PPP loan disbursed to LoanCoins.

2. All documents or communications relating to each of LoanCoins' PPP loan applications, including the filed applications, attachments, supporting documentation, draft applications, worksheets, disclosures, communications with U.S. Bank or any other financial institution, and communications with the SBA.

3. All documents or communications relating to each of LoanCoins' applications for PPP loan forgiveness, including the filed applications, attachments, supporting documentation, draft applications, worksheets, disclosures, communications with U.S. Bank or any other financial institution, and communications with the SBA.

4. All documents or communications relating to LoanCoins' eligibility for PPP loans, including documents or communications relating to LoanCoins' understanding of its eligibility and LoanCoins' certifications that it was eligible.

5. All documents or communications relating to LoanCoins' eligibility for PPP loan forgiveness, including documents or communications relating to LoanCoins' understanding of its eligibility and LoanCoins' certifications that it was eligible.

6. All documents or communications relating to disbursement of PPP loan funds to LoanCoins.

7. All documents or communications showing LoanCoins' payroll costs for 2018, 2019, 2020, and 2021.

8. All documents or communications showing LoanCoins' payments of interest on mortgage obligations, rent payments, and utility payments for 2018, 2019, 2020, and 2021.

9. Documents sufficient to show all expenses paid by LoanCoins using PPP loan funds, including the purpose(s) of the expenses.

10. Documents sufficient to show the identities and positions of LoanCoins' principals and managerial employees during the relevant time period.

11. Documents, such as organizational diagrams or charts, sufficient to show LoanCoins' organizational and managerial structures during the relevant time period.

12. Documents, such as organizational diagrams or charts, sufficient to show LoanCoins' affiliated entities and their organizational relationship with LoanCoins during the relevant time period.

13. LoanCoins' signed and filed federal tax returns, including all schedules, certified by the Internal Revenue Service, for 2018, 2019, 2020, 2021, and 2022, including the tax returns for all of LoanCoins' affiliated entities.

14. All documents relating to LoanCoins' document retention policies, including policies concerning the retention of electronically stored information and emails.

15. All documents used in drafting responses to the interrogatories in Attachment C.

CID NO. 2025-EDCA-0011

## ATTACHMENT C

## INTERROGATORIES

1. For each PPP loan received by LoanCoins, identify the PPP loan number, the loan amount, and the loan amount forgiven.

2. Describe LoanCoins' business structure and tax status under the Internal Revenue Code for 2018, 2019, 2020, and 2021.

3. Identify each of LoanCoins' employees for 2018, 2019, 2020, and 2021, including each person's name, position, and contact information (business address, phone number, and email address).

4. Identify the total annual payroll costs for each employee of LoanCoins for 2018, 2019, 2020, and 2021.

5. Identify LoanCoins' total payments for rent, utilities, and interest on mortgage obligations for 2018, 2019, 2020, and 2021.

6. Identify each expense for which LoanCoins used PPP loan funds, including its amount and purpose.

7. Identify the owner(s) of each of LoanCoins' affiliated entities, as provided on the entity's filed federal tax returns. If an owner is an irrevocable trust, list that trust as the owner. If an owner is a revocable trust, also identify the individual creator(s) of the trust. If an owner is a company or companies, also identify the owner(s) of the company(ies).

8. Identify all people who participated or were involved in LoanCoins' decision(s) to apply for loans under the PPP, including each person's name, position, and contact information (business address, phone number, and email address).

9. Identify all people who participated or were involved in LoanCoins' decision(s) to apply for loan forgiveness under the PPP, including each person's name, position, and contact information (business address, phone number, and email address).

10. Describe the steps taken by LoanCoins to determine whether it was eligible to receive PPP loans, including the specific loan amounts requested, prior to submitting any such loan application.

11. Describe the steps taken by LoanCoins to determine whether it was eligible to receive PPP loan forgiveness, including the specific amounts requested to be forgiven, prior to submitting any such loan forgiveness application.

12. Identify any documents or communications outside your possession, custody, or control that pertain to LoanCoins' eligibility to receive loans under the PPP, including each document's type, date, title, and last known location.

13. Identify any documents or communications outside your possession, custody, or control that pertain to LoanCoins' eligibility for loan forgiveness under the PPP, including each document's type, date, title, and last known location.

14. Identify the people most knowledgeable regarding the matters addressed in this Demand, including each person's name, position, and contact information (business address, phone number, and email address).

15. Identify all people who were involved in drafting responses to these interrogatories, including each person's name, position, and contact information (business address, phone number, and email address).

16. Identify all documents that were used in drafting responses to these interrogatories, including each document's type, date, and title.

# APPENDIX

## SPECIFICATIONS FOR PRODUCTION OF ELECTRONICALLY STORED INFORMATION (ESI) AND DIGITIZED ("SCANNED") IMAGES ("PRODUCTION SPECIFICATIONS")

Careful consideration should be given to the methodology, implementation and documentation of ESI collection to ensure that all responsive data and metadata are preserved in the collection process.

### 1. SPECIFICATION MODIFICATIONS

Any modifications or deviations from the Production Specifications may be done only with the express permission of the government and these modifications or deviations should be communicated to the government and approved by the government in written form. Any responsive data or documents that exist in locations or native forms not discussed in these Production Specifications remain responsive and, therefore, arrangements should be made with the government to facilitate their production.

### 2. PRODUCTION FORMAT OF ESI AND IMAGED HARD COPY

Responsive ESI and imaged hard copy shall be produced in the format outlined below. All ESI, except as outlined below in sections 5 – 20, shall be rendered to TIFF image format, and must be accompanied by the following files:

**a.** **Concordance.dat** (All applicable metadata (see section 3 below) shall be extracted and provided in Concordance® load file format.

**b.** **Ipro.lfp** (Or alternatively a Concordance® Image Cross Reference file - .opt).

**c.** **IproOCR.lfp** file.

**d.** **Image File Format** must be in the following format:

All images, paper documents scanned to images, or rendered ESI, shall be produced as 300 dpi single-page TIFF files, CCITT Group IV (2D Compression). Images should be uniquely and sequentially Bates numbered and unless otherwise specified, Bates numbers should be an endorsement on each image.

- All TIFF file names shall include the unique Bates number burned into the image. (See paragraph 21, below, regarding Bates number instructions.)
  - Each Bates number shall be a standard length, include leading zeros in the number, and be unique for each produced page.
  - All TIFF image files shall be stored with the ".tif" extension.
  - Images shall be OCR'd using standard COTS products.
    - An exception report shall be provided when limitations of paper digitization software/hardware or attribute conversion do not allow

for OCR text conversion of certain images. The report shall include the DOCID or Bates number(s) corresponding to each such image.

- All pages of a document or all pages of a collection of documents that comprise a folder or other logical grouping, including a box, shall be delivered on a single piece of media.
- No image folder shall contain more than 2000 images.

e. **Ipro.lfp and IproOCR.lfp or in the alternative Concordance® Image Cross Reference file:** Images should be accompanied by an Ipro.lfp and IproOCR.lfp file or in the alternative a Concordance® Image Cross Reference file that associates each Bates number with its corresponding single-page TIFF image file. The Cross Reference file should also contain the image file path for each Bates numbered page.

- Ipro.lfp file format:

```
IM, ABC00000001,D,0,@2015_1211;DatabaseName\Images\001; ABC00000001.tif;2,0
IM, ABC00000002,,0,@2015_1211;DatabaseName\Images\001; ABC00000002.tif;2,0
IM, ABC00000003,,0,@2015_1211;DatabaseName\Images\001; ABC00000003.tif;2,0
IM, ABC00000004,D,0,@2015_1211;DatabaseName\Images\001; ABC00000004.tif;2,0
```

- Image Cross Reference Sample Format:

```
ABC00000001,OLS,D:\DatabaseName\Images\001\ ABC00000001.TIF,Y,,,
ABC00000002,OLS:\DatabaseName\Images\001\ ABC00000002.TIF,,,,
ABC00000003,OLS:\DatabaseName\Images\001\ ABC00000003.TIF,,,,
ABC00000004,OLS,D:\DatabaseName\Images\001\ ABC00000004.TIF,Y,,,
```

f. **Concordance® Load File:** Images should also be accompanied by a "text load file" containing delimited text that will populate fields in a searchable, flat database environment. The file should contain the required fields listed below in section 3.

- Text delimited load files are defined using the standard Concordance delimiters. For example:

| | |
|---|---|
| *Field Separator* | *¶ or Code 020* |
| *Text Qualifier* | *þ or Code 254* |

- The text file should also contain hyperlinks to applicable native files, such as Microsoft Excel, PowerPoint, Audio or Video files.
- There should be one line for every record in a collection.
- The load file must contain a header listing the metadata/database fields contained within in the order they appear within the data file. For example, if the data file consists of a First Page of a Record (BegDoc), Last Page of a Record (EndDoc), DOCID, DOCDate, File Name, and a Title, then the structure may appear as follows:

þBEGDOCþ¶þENDDOCþ¶þDOCIDþ¶þDOCDATEþ¶þFILENAMEþ¶þTITLEþ

**g.** **The extracted/OCR text** for each document should be provided as a separate single text file. The file name should match the BEGDOC or DOCID for that specific record and be accompanied by the .txt extension.

**h.** **Directory and folder structure:** The directory structure for productions should be:

*CaseName***LoadFiles**
*CaseName***Images** < For supporting images (can include subfolders as needed should not include more than 2,000 files per folder)
*CaseName***Natives** <Native Files location (can include subfolders as needed should not include more than 2,000 files per folder)
*CaseName***Text** <Extracted Text files location (can include subfolders as needed should not include more than 2,000 files per folder)

## 3. REQUIRED METADATA/DATABASE FIELDS

- A "✓" denotes that the indicated field should be present in the load file produced.
- "Other ESI" includes data discussed in sections 5 – 20 below, but does not include email, email repositories (section 11), "stand alone" items (section 12), and imaged hard copy material (section 9). Email, email repositories, and "stand alone" materials (section 12) should comply with "Email" column below. Imaged hard copy materials should comply with the "Hard Copy" column.

CID NO. 2025-EDCA-0011

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|---|---|
| BEGDOC | Start Bates (including prefix) - No spaces | Text | 60 | ✓ | ✓ | ✓ |
| ENDDOC | End Bates (including prefix) - No spaces | Text | 60 | ✓ | ✓ | ✓ |
| BEGATTACH | Start Bates number of first attachment | Text | 60 | ✓ | ✓ | ✓ |
| ENDATTACH | End Bates number of last attachment | Text | 60 | ✓ | ✓ | ✓ |
| DOCID | Unique document Bates # or populate with the same value as Start Bates (DOCID = BEGDOC#) | Text | 60 | ✓ | ✓ | ✓ |
| PAGECNT | Page Count | Number | 10 | ✓ | ✓ | ✓ |
| COLLECTION SOURCE | Name of the Company/Organization data was collected from | Text | 160 | ✓ | ✓ | ✓ |
| SOURCE ID (BOX #) | Submission/volume/box number | Text | 10 | ✓ | ✓ | ✓ |
| CUSTODIAN | Custodian/Source - format: Last, First or ABC Dept. | Text | 160 | ✓ | ✓ | ✓ |
| AUTHOR | Creator of the document | Text | 500 | | | ✓ |
| GROUPID | Contains the Group Identifier for the family, in order to group files with their attachments | Text | 60 | | ✓ | ✓ |
| PARENTID | Contains the Document Identifier of an attachment's parent | Text | 60 | | ✓ | ✓ |
| ATTACHIDS | Child document list; Child DOCID or Child Start Bates | Text – semicolon delimited | Unlimited | ✓ | ✓ | ✓ |
| ATTACHLIST | List of Attachment filenames | Text – semicolon delimited | Unlimited | | ✓ | ✓ |
| PROPERTIES | Privilege notations, Redacted, Document Withheld Based On Privilege | Text – semicolon delimited | Unlimited | ✓ | ✓ | ✓ |
| DOCTYPE | Use the following choices: Image, Loose E-mail, E-mail, E-Doc, Attachment, Hard Copy or Other. If using Other, please specify what type after Other | Text | 60 | ✓ | ✓ | ✓ |
| FROM | Author - format: Last name, First name. | Text | 160 | | ✓ | ✓ |
| TO | Recipient - format: Last name, First name. | Text – semicolon delimited | Unlimited | | ✓ | ✓ |

CID NO. 2025-EDCA-0011

| | | | | | | |
|---|---|---|---|---|---|---|
| CC | Carbon Copy Recipients - format: Last name, First name. | Text – semicolon delimited | Unlimited | | ✓ | ✓ |
| BCC | Blind Carbon Copy Recipients - format: Last name, First name. | Text – semicolon delimited | Unlimited | | ✓ | ✓ |
| SUBJECT | Subject line/Document Title | Text | Unlimited | | ✓ | ✓ |
| EMAIL SUBJECT | Subject line for Emails | Text | Unlimited | | ✓ | ✓ |
| CONVINDEX | E-mail system ID used to track replies, forwards, etc. | Text | Unlimited | | ✓ | |
| DATE MODIFIED | DATE ONLY - Last Modified Date for files and Sent date for e-mail, this field inherits the date for attachments from their parent. | Date | MM/DD/YYYY | | ✓ | ✓ |
| DATE SENT | DATE ONLY - Date Sent for files and Sent date for e-mail, this field inherits the date for attachments from their parent. | Date | MM/DD/YYY | | ✓ | ✓ |
| TEXT FILEPATH | Relative file path of the text file associated with either the extracted text or the OCR | Text | Unlimited | ✓ | ✓ | ✓ |
| DATE TIME SENT | Date Sent (USE TIME ZONE OF COLLECTION LOCALITY) | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | ✓ |
| DATE TIME CRTD | Date Created (USE TIME ZONE OF COLLECTION LOCALITY) | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | ✓ |
| DATE TIME SVD | Date Saved (USE TIME ZONE OF COLLECTION LOCALITY) | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | ✓ |
| DATE TIME MOD | Date Last Modified (USE TIME ZONE OF COLLECTION LOCALITY) | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | ✓ |
| DATE TIME RCVD | Date Received (USE TIME ZONE OF COLLECTION LOCALITY) | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | |
| DATE TIME ACCD | Date Accessed (USE TIME ZONE OF COLLECTION LOCALITY) | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | ✓ |
| FILE SIZE | Native File Size in bytes | Number | 10 | | | ✓ |
| FILENAME | File name - name of file as it appeared in its original location | Text | Unlimited | | | ✓ |
| APPLICATION | Application used to create native file (e.g. Excel, Outlook, Word) | Text | 160 | | ✓ | ✓ |
| FILE EXTENSION | Extension for the file (e.g. .doc, .pdf, .wpd) | Text | 10 | | ✓ | ✓ |

CID NO. 2025-EDCA-0011

| | | | | | | |
|---|---|---|---|---|---|---|
| FILEPATH | Data's original source full folder path | Text | Unlimited | | ✓ | ✓ |
| NATIVE LINK | Relative file path location to the native file | Text | Unlimited | | ✓ | ✓ |
| FOLDER ID | Complete E-mail folder path (e.g. Inbox\Active) or Hard Copy container information (e.g. folder or binder name) | Text | Unlimited | ✓ | ✓ | ✓ |
| PARAGRAPH REQUEST NUMBER | Subpoena/request paragraph number to which the document is responsive. Use semicolon to delimit multiple entries. | Text – semicolon delimited | Unlimited | ✓ | ✓ | ✓ |
| MD5_HASH | MD5 Hash value (used for deduplication or other processing) (e-mail hash values must be run with the e-mail and all of its attachments) | Text | Unlimited | | ✓ | ✓ |
| MESSAGEHEADER | E-mail header. Can contain IP address | Text | Unlimited | | ✓ | |
| ATTACHMCOUNT | Number of attachments (any level child document) associated with a ParentID | Text | 10 | | ✓ | |
| FILE TYPE | Identifies the application that created the file Type of file, not to be confused with file extension | Text | 160 | | ✓ | ✓ |
| COMMENTS | Identifies whether the document has comments associated with it | Text | 10 | | ✓ | ✓ |
| MESSAGE TYPE | Exchange Message class or equivalent | Text | 60 | | ✓ | |
| EXTENDED PROPERTIES | For PDFs Only | Text | 600 | | ✓ | ✓ |

## 4. SEARCH, DE-DUPLICATION, NEAR-DUPLICATE IDENTIFICATION, E-MAIL CONVERSATION THREADING AND OTHER CULLING PROCEDURES

De-duplication of exact copies within a custodian's data may be done at the family level, but all file paths and custodians must be provided for each duplicate document in an exception report in .csv format. The recipient shall not use any other procedure to cull, filter, group, separate or de-duplicate, or near-deduplicate, etc. (i.e., reduce the volume of) responsive material before discussing with and obtaining the written approval of the government. All objective coding (e.g., near duplicate ID or e-mail thread ID) shall be discussed and produced to the government as additional metadata fields. The recipient will not employ analytic software or technology to search identify, or review potentially responsive material, including but not limited to technology assisted review (TAR) or predictive coding, without first discussing with the government.

**5. HIDDEN TEXT**

All hidden text (e.g. track changes, hidden columns, mark-ups, notes) shall be expanded and rendered in the image file. For files that cannot be expanded the native files shall be produced with the image file.

**6. EMBEDDED FILES**

All non-graphic embedded objects (Word documents, Excel spreadsheets, .wav files, etc.) that are found within a file shall be extracted and produced. For purposes of production, the embedded files shall be treated as attachments to the original file, with the parent/child relationship preserved.

**7. IMAGE-ONLY FILES**

All image-only files (non-searchable .pdfs, multi-page .tiffs, Snipping Tool and other screenshots, etc., as well as all other images that contain text) shall be produced with associated OCR text and metadata/database fields identified in section 3 for "Other ESI."

**8. ENCRYPTED FILES**

Any data (whether individual files or digital containers) that is protected by a password, encryption key, digital rights management, or other encryption scheme, shall be decrypted prior to processing for production.

- **a.** The unencrypted text shall be extracted and provided per section 2.c. The unencrypted files shall be used to render images and provided per sections 2.a and 2.b. The unencrypted native file shall be produced pursuant to sections 10-20.
- **b.** If such protected data is encountered but unable to be processed, each file or container shall be reported as an exception in the accompanying Exception Report (pursuant to section 26) and shall include all available metadata associated with the data, including custodian information.

**9. PRODUCTION OF IMAGED HARD COPY RECORDS**

All imaged hard copy material shall reflect accurate document unitization including all attachments and container information (to be reflected in the PARENTID, ATTACHID, BEGATTACH, ENDATTACH and FOLDERID).

- **a.** Unitization in this context refers to identifying and marking the boundaries of documents within the collection, where a document is defined as the smallest physical fastened unit within a bundle. (e.g., staples, paperclips, rubber bands, folders, or tabs in a binder).
- **b.** The first document in the collection represents the parent document and all other documents will represent the children.
- **c.** All imaged hard copy documents shall be produced as 300 dpi single-page TIFF files, CCITT Group IV (2D Compression). All documents shall be produced in black and white TIFF format unless the image requires color. An image requires color when color in the document adds emphasis to information in the document or is itself

information that would not be readily apparent on the face of a black and white image. Images identified as requiring color shall be produced as color 300 dpi single-page JPEG files.

**d.** All objective coding (e.g., document date or document author) should be discussed and produced to the government as additional metadata/database fields.

### 10. PRODUCTION OF SPREADSHEETS AND PRESENTATION FILES

All spreadsheet and presentation files (e.g. Excel, PowerPoint) shall be produced in the unprocessed "as kept in the ordinary course of business" state (i.e., in native format), with an associated placeholder image and endorsed with a unique Bates number. *See* section 20 below. The file produced should maintain the integrity of all source, custodian, application, embedded and related file system metadata. No alteration shall be made to file names or extensions for responsive native electronic files. The file shall include a text file with the extracted text named with the same corresponding unique Bates number specified above.

### 11. PRODUCTION OF E-MAIL REPOSITORIES

E-mail repositories, also known as e-mail databases (e.g., Outlook PST, Lotus NSF, etc.), can contain a variety of items, including: messages, calendars, contacts, tasks, etc. For purposes of production, responsive items shall include the "E-mail" metadata/database fields outlined in section 3, including but not limited to all parent items (mail, calendar, contacts, tasks, notes, etc.) and child files (attachments of files to e-mail or other items) with the parent/child relationship preserved. Our preferred format for e-mail productions is PST. E-mail should NOT be provided in X400 or X500 format. E-mail databases from systems other than Microsoft Exchange shall be produced after consultation with and written consent of the government about the format for the production of such databases.

### 12. PRODUCTION OF ITEMS ORIGINALLY GENERATED IN E-MAIL REPOSITORIES BUT FOUND AND COLLECTED OUTSIDE OF E-MAIL REPOSITORIES, I.E., "STAND-ALONE" ITEMS

Any parent e-mail or other parent items (e.g., calendar, contacts, tasks, notes, etc.) found and collected outside of e-mail repositories (e.g., items having extensions .msg, .htm, .mht, etc.), shall be produced with the "Loose E-mail" metadata fields outlined in section 3, including but not limited to any attachments, maintaining the family (parent/child) relationship.

### 13. PRODUCTION OF INSTANT MESSENGER (IM), VOICEMAIL DATA, AUDIO DATA, VIDEO DATA, ETC.

The responding party shall identify, collect, and produce any and all data which is responsive to the requests which may be stored in audio or video recordings, cell phone/PDA/Blackberry/smart phone data, tablet data, voicemail messaging data, instant messaging, text messaging, conference call data, video/audio conferencing (e.g., GoTo Meeting, WebEx), and related/similar technologies. However, such data, logs, metadata or other files related thereto, as well as other less common but similar data types, shall be produced after consultation with and written consent of the government about the format for the production of such data.

## 14. PRODUCTION OF SOCIAL MEDIA

Prior to any production of responsive data from social media (e.g., Twitter, Facebook, Google+, LinkedIn, etc.) the producing party shall first discuss with the government the potential export formats before collecting the information, to ensure it is collected and produced in a way that preserves the original metadata, has a clear chain of custody, and provides as much information as possible regarding the source and history of each individual communication.

Social media platforms offer different functions, forms of content, and capability for downloading accounts. Because of these differences, prior to collection of social media data, the producing party must discuss with the government the available export and production methods and formats that the producing party is considering. Unless the government agrees to an alternative in writing, regardless of the social media platform, productions of social media content must meet the following general requirements: (1) separate (2) searchable (3) static images of (4) each responsive posting on the social media platform, (5) all related content (e.g., comments, likes, share or re-transmittal information, images, videos, linked documents and content), and (6) associated metadata (e.g., user name(s), date, and time of all posts, comments, likes, share or re-transmittals).

These general requirements are in addition to any more specific requirements in a particular request (e.g., geolocation data), and the producing party must ask the government about any perceived conflict between these requirements and another source of specifications or requirements. If available from the social media platform or through social media data processing software, files that facilitate interactive review of the data (i.e., html files) as well as load files in .csv format must be produced with the associated content.

## 15. PRODUCTION OF STRUCTURED DATA

Prior to any production of responsive data from a structured database (e.g., Oracle, SAP, SQL, MySQL, QuickBooks, etc.), the producing party shall first identify the database type and version number, provide the database dictionary and any user manuals, or any other documentation describing the structure and/or content of the database and a list of all reports that can be generated from the database. The list of reports shall be provided in native Excel (.xls or .xlsx) format.

## 16. PRODUCTION OF STRUCTURED DATA FROM PROPRIETARY APPLICATIONS

Prior to any production of structured data from proprietary applications (e.g., proprietary timekeeping, accounting, sales rep call notes, CRMs, SharePoint etc.) the producing party shall first provide the database dictionary and a list of all reports that can be generated from the structured database. The list of reports shall be produced in native Excel (.xls or .xlsx) format.

## 17. PRODUCTION OF PHOTOGRAPHS WITH NATIVE FILE OR DIGITIZED ESI

Photographs shall be produced as single-page JPEG files with a resolution equivalent to the original image as they were captured/created. All JPEG files shall have extracted metadata/database fields provided in a Concordance® load file format as outlined in section 3 for "Other ESI."

### 18. PRODUCTION OF IMAGES FROM WHICH TEXT CANNOT BE OCR CONVERTED

An exception report shall be provided when limitations of paper digitization software/hardware or attribute conversion do not allow for OCR text conversion of certain images. The report shall include the DOCID or Bates number(s) corresponding to each such image.

### 19. PRODUCTION OF ESI FROM NON-PC OR NON-WINDOWS-BASED SYSTEMS

If responsive ESI is in non-PC or non-Windows-based Systems (e.g., Apple, IBM mainframes, and UNIX machines, Android device, etc.), the ESI shall be produced after discussion with and written consent of the government about the format for the production of such data.

### 20. PRODUCTION OF NATIVE FILES (WHEN APPLICABLE PURSUANT TO THESE SPECIFICATIONS)

Production of native files, as called for in these specifications, shall have extracted metadata/database fields provided in a Concordance® load file format as defined in the field specifications for "Other ESI" as outlined in section 3.

ESI shall be produced in a manner which is functionally usable by the government. The following are examples:

**a.** AutoCAD data, e.g., DWG and DXF files, shall be processed/converted and produced as single-page JPG image files and accompanied by a Concordance® Image formatted load file as described above. The native files shall be placed in a separate folder named "NATIVES" on the production media and linked by a hyperlink within the text load file.

**b.** GIS data shall be produced in its native format and be accompanied by a viewer such that the mapping or other data can be reviewed in a manner that does not detract from its ability to be reasonably understood.

**c.** Audio and video recordings shall be produced in native format and be accompanied by a viewer if such recordings do not play in a generic application (e.g., Windows Media Player).

### 21. BATES NUMBER CONVENTION

All images should be assigned a unique Bates numbers before production to the government. Each Bates number shall be a standard length, include leading zeros in the number, and be unique for each produced page. The numbers should be endorsed on the actual images at a location that does not obliterate, conceal, or interfere with any information from the source document. Native files should be assigned a single Bates number for the entire file which will represent the native document in the load/dat file. The load/dat file will include a reference to the native file path and utilize the NATIVELINK metadata field). The Bates number shall not exceed 30 characters in length and shall include leading zeros in the numeric portion. The Bates number shall be a unique number given to each page (when assigned to an image) or to each document (when assigned to a native file). If the parties agree to a rolling production, the numbering convention shall remain consistent throughout

the entire production. There shall be no spaces between the prefix and numeric value. If suffixes are required, please use "dot notation." Below is a sample of dot notation:

| | |
|---|---|
| PREFIX_0000001 | PREFIX_0000003 |
| PREFIX0000001 | PREFIX0000003 |
| PREFIX0000001.001 | PREFIX0000003.001 |
| PREFIX0000001.002 | PREFIX0000003.002 |

## 22. MEDIA FORMATS FOR STORAGE AND DELIVERY OF PRODUCTION DATA

Electronic documents and data shall be delivered on any of the following media:

- **a.** CD-ROMs and/or DVD-R (+/-) formatted to ISO/IEC 13346 and Universal Disk Format 1.02 specifications; Blu-ray.
- **b.** External hard drives (USB 3.0 or higher, Firewire or eSATA, formatted to NTFS format specifications) or flash drives.
- **c.** Storage media used to deliver ESI shall be appropriate to the size of the data in the production.
- **d.** Media should be labeled with the case name, production date, Bates range, and producing party.

## 23. VIRUS PROTECTION AND SECURITY FOR DELIVERY OF PRODUCTION DATA

Production data shall be free of computer viruses. Any files found to include a virus shall be quarantined by the producing party and noted in a log to be provided to the government. Password protected or encrypted files or media shall be provided with corresponding passwords and specific decryption instructions. No encryption software shall be used without the written consent of the government.

## 24. COMPLIANCE AND ADHERENCE TO GENERALLY ACCEPTED TECHNICAL STANDARDS

Production shall be in conformance with standards and practices established by the National Institute of Standards and Technology ("NIST" at www.nist.gov), U.S. National Archives & Records Administration ("NARA" at www.archives.gov), American Records Management Association ("ARMA International" at www.arma.org), American National Standards Institute ("ANSI" at www.ansi.org), International Organization for Standardization ("ISO" at www.iso.org), and/or other U.S. Government or professional organizations.

## 25. READ ME TEXT FILE

All deliverables shall include a "read me" text file at the root directory containing: total number of records, total number of images/pages or files, mapping of fields to plainly identify field names, types, lengths, and formats. The file shall also indicate the field name to which images will be linked for viewing, date and time format, and confirmation that the number of files in load files matches the number of files produced.

## 26. EXCEPTION REPORT

An exception report, in .csv format, shall be included, documenting any production anomalies utilizing the electronic Bates number (DOCID or control numbering) assigned during the collection, processing, and production phases.

## 27. TRANSMITTAL LETTER TO ACCOMPANY DELIVERABLES

All deliverables should be accompanied by a transmittal letter including the production date, case name and number, producing party name, and Bates number range produced.

CID NO. 2025-EDCA-0011

# DECLARATION OF COMPLIANCE

(Documents)

I have responsibility for producing the documents requested by this Civil Investigative Demand. I hereby certify that all the documentary material required by the Civil Investigative Demand and in the possession, custody, or control of LoanCoins, Inc., has been produced to the false claims law investigator or custodian named therein.

If any such material has not been produced because of a lawful objection, the objection to the document request and the reasons for the objection have been stated.

I declare under penalty of perjury under the laws of the United States of America (28 U.S.C. § 1746) that the forgoing is true and correct.

Executed on __________
Date

______________________________
Printed Name

______________________________
Title

______________________________
Signature

CID NO. 2025-EDCA-0011

# DECLARATION OF CUSTODIAN OF RECORDS

(Documents)

I, the undersigned, being the duly authorized Custodian of Records and having authority to certify the attached records, declare the following:

☐ CERTIFICATION OF RECORDS COPIED

A. The attached records were (1) made at or near the time of the acts, events, or conditions set forth therein by, or from information transmitted by, a person with knowledge of those matters, (2) kept in the course of LoanCoins' regularly conducted activities, and (3) made pursuant to a regular practice of those regularly conducted activities, per Fed. R. Evid. 902(11).

B. The records provided are true copies of all the documents described in the Civil Investigative Demand presented to me, or the original records were provided to the attorney or the attorney's representative for copying at our place of business.

☐ CERTIFICATION OF NO RECORDS

A. A thorough search of our organization's files, carried out under my direction, revealed no documents or records requested in the Civil Investigative Demand presented to me.

B. It is understood that such documents or records could exist under another spelling, name, or classification, but with the information furnished to our organization, and to the best of our knowledge, no such records exist in our possession, custody, or control.

I declare under penalty of perjury under the laws of the United States of America (28 U.S.C. § 1746) that the forgoing is true and correct.

Executed on __________
Date

______________________________
Printed Name

______________________________
Title

______________________________
Signature

CID NO. 2025-EDCA-0011

**DECLARATION OF COMPLIANCE**

(Interrogatories)

I have responsibility for answering the written interrogatories provided in this Civil Investigative Demand. I hereby certify that all the information required by the Civil Investigative Demand and in the possession, custody, control, or knowledge of the person to whom the Demand is directed has been submitted to the false claims law investigator or custodian identified therein. I certify under penalty of perjury under the laws of the United States of America that the interrogatory responses are true and correct.

If any such information has not been furnished because of a lawful objection, the objection to the interrogatory and the reasons for the objection have been stated.

I declare under penalty of perjury under the laws of the United States of America (28 U.S.C. § 1746) that the forgoing is true and correct.

Executed on __________
Date

______________________________
Printed Name

______________________________
Title

______________________________
Signature

CID NO. 2025-EDCA-0011

**VERIFIED RETURN OF SERVICE**

I, Bonnie L. L'Argent, an employee of the United States working under the direction and supervision of Assistant U.S. Attorney Robert A. Fuentes in connection with a false claims law investigation, hereby certify that on March 17, 2025, I served Civil Investigative Demand No. 2025-EDCA-0011 on LoanCoins, Inc., by delivering an executed copy of such Demand via Certified Mail, with a Return Receipt requested, to:

LoanCoins, Inc.
c/o Kamran Mohammadi
Owner
161 N. Civic Drive #401
Walnut Creek, CA 94596

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 17, 2025, at Fresno, California.

Signature [signature]

Title Legal Assistant

9589 0710 5270 0300 1574 01

U.S. Postal Service™
CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Certified Mail Fee
$
Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy) $
☐ Return Receipt (electronic) $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required $
☐ Adult Signature Restricted Delivery $

Postmark Here

Postage
$
Total Postage
$
Sent To
Street and Apt.
City, State, ZIP

Jeffrey M. McGaffick
LoanCoins, Inc.
571 East 185th St.
Cleveland, Ohio 44119

PS Form 3800, January 2023 PSN 7530-02-000-9047 See Reverse for Instructions

9589 0710 5270 0300 1573 95

U.S. Postal Service™
CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Certified Mail Fee
$
Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy) $
☐ Return Receipt (electronic) $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required $
☐ Adult Signature Restricted Delivery $

Postmark Here

Postage
$
Total Postage
$
Sent To
Street and Apt.
City, State, ZIP

LoanCoins, Inc.
c/o Kamran Mohammadi
Owner
161 N. Civic Drive #401
Walnut Creek, CA 94596

PS Form 3800, January 2023 PSN 7530-02-000-9047 See Reverse for Instructions

# Exhibit F

# USPS Tracking®

FAQs >

Tracking Number:

Remove ✕

**9589071052700300157395**

Copy Add to Informed Delivery (https://informeddelivery.usps.com/)

## Latest Update

Your item was delivered to the front desk, reception area, or mail room at 9:21 am on March 20, 2025 in WALNUT CREEK, CA 94596.

**Get More Out of USPS Tracking:**

**USPS Tracking Plus®**

Feedback

## Delivered

**Delivered, Front Desk/Reception/Mail Room**

WALNUT CREEK, CA 94596
March 20, 2025, 9:21 am

**See All Tracking History**

**What Do USPS Tracking Statuses Mean? (https://faq.usps.com/s/article/Where-is-my-package)**

**Text & Email Updates**

**USPS Tracking Plus®**

**Product Information**

**See Less**

Track Another Package

Enter tracking or barcode numbers

## Need More Help?

Contact USPS Tracking support for further assistance.

**FAQs**

# Exhibit G

**From:** Amin, Tara (USACAE)
**Sent:** Wednesday, July 29, 2026 2:21 PM
**To:** Mark Reichel
**Subject:** RE: Aran Investments/BitCasas/LoanCoins: CID Response date July 31, 2026

Mark,

I have not yet received a reply to my below correspondence, dated July 13, 2026. As noted below, I am requesting full compliance with all three outstanding March 2025 CIDs by this Friday, July 31. If I do not receive a response from you by then, I intend to move to enforce the CIDs in court.

Thank you,
Tara

**Tara Amin**
Assistant United States Attorney, ACE Unit
United States Attorney's Office | Eastern District of California
501 I Street, Suite 10-100 | Sacramento, CA 95814
Office: (916) 554-2717 | Cell: (916) 402-5491 | Email: tara.amin@usdoj.gov

---

**From:** Amin, Tara (USACAE)
**Sent:** Monday, July 13, 2026 1:26 PM
**To:** Mark Reichel <mark@reichellaw.com>
**Subject:** Aran Investments/BitCasas/LoanCoins: CID Response date July 31, 2026
**Importance:** High

Mark,

The United States issued Civil Investigative Demands to LoanCoins, Inc., Aran Investments, Inc., and BitCasas, Inc. on March 17, 2025. Please see attached copies. Over the past 16 months, it is my understanding that none of the entities have provided any documents or written interrogatory responses in compliance with the subpoena. In an attempt to gain compliance without court involvement, I am setting the response date as Friday, July 31, 2026. If I do not receive full compliance by then, I will move to enforce the CIDs in court.

In prior correspondence with Robert Fuentes, you indicated that Mr. Kamran Mohammadi is invoking his Fifth Amendment rights with respect to three CIDs. With respect to all three CIDs, Mr. Mohammadi cannot invoke his personal Fifth Amendment right to prevent compliance. It is well established law that corporations do not have a Fifth Amendment right against self-incrimination. *Braswell v. United States,* 487 U.S. 99,105 (1988). LoanCoins, Inc., Aran Investments, Inc., and BitCasas, Inc. are all corporations. Therefore, none of them have Fifth Amendment rights to invoke. And Mr. Mohammadi, as a corporate representative of these entities, "may not resist a subpoena for corporate records on Fifth Amendment grounds." *Id.* at 113; *see also In re Twelve Grand Jury Subpoenas*, 908 F.3d 525, 529-31 (9th Cir. 2018); *United States v. CB Surety LLC,* No. 2:23-cv-02812-TLN-DB, 2024 WL 71676, at *4-5 (E.D. Cal. Jan. 5, 2024).

**Tara Amin**
Assistant United States Attorney, ACE Unit
United States Attorney's Office | Eastern District of California

501 I Street, Suite 10-100 | Sacramento, CA 95814
Office: (916) 554-2717 | Cell: (916) 402-5491 | Email: tara.amin@usdoj.gov